Vicki C. HIBBS (now Tillman), Appellant,

v.

William CHANDLER and Alma Chandler, Appellees.

Court of Appeals of Kentucky.

Feb. 1, 1985.

ural father of her son, Joseph Matthew Hibbs, born December 19, 1979. The putative father, Joe Ed Chandler, met an untimely death on March 30, 1979. He died intestate and no personal representative was ever appointed; therefore, there was never any formal administration of an estate.

The complaint named William C. Chandler, Jr., and Alma Gray Chandler as defendants therein. They are the parents of Joe Ed Chandler and his heirs at law. These putative grandparents were sued pursuant to K.R.S. 396.060, entitled LIABILITY OF HEIRS AND DEVISEES. The movant's complaint made no demand for money support of the child but did request that paternity be declared. Proof taken by deposition showed that the sole purpose of the suit was to allow Vicki to obtain social security benefits on behalf of her child against Joe Ed Chandler's account.

Based on the depositions, and other papers filed of record, the district court entered a summary judgment dismissing the complaint. The foremost conclusion of law made by the court stated, "that the plaintiff [Vicki C. Hibbs] has failed to persuade the court by clear and convincing evidence that Joe Ed Chandler is the father of the child, Matthew Hibbs."

Steve P. Robey, Providence, for movant.

J. Quentin Wesley, Wesley & Simpson, Morganfield, for respondents.

Before COOPER, McDONALD and WHITE, JJ.

McDONALD, Judge:

This matter has come to us by petition for discretionary review which we have granted.

### Procedural Background

Movant, Vicki C. Hibbs, originally filed a complaint in the Webster District Court alleging that Joe Ed Chandler was the nat-

### Factual Background

Movant, Vicki C. Hibbs, claims that she became pregnant by Joe Ed Chandler. The probable date of conception was March 17 or March 24, 1979, just several days before his untimely death, when she had intercourse with him in Bernie Hunt's trailer in Marion, Kentucky. In deposition testimony Vicki stated that the affairs happened on Saturday nights: "More than likely it was after midnight because if there was a party going on it would be after midnight." In the trailer also were Randy Guess and Randy Alcott.

Blood tests were ordered by the district court from the mother, child and putative paternal grandparents. The results con-

cluded that Joe Ed Chandler fell within the 64% to 99% probability range. The expert physician recommended, however, that an HLA test be administered as it is considerably more precise in determining paternity. The district court refused to order the additional blood tests.

The proof that persuaded the district court to dismiss the complaint without empaneling a jury was: On one of the nights in question Joe Ed Chandler was arrested at about 11:00 p.m. in Uniontown which was 40 miles from Marion, and he was at work in the coal mines after midnight on the third shift; and on the other night in question Joe Ed was at work in the mines on the third shift after midnight.

The trial court reasoned that Vicki could not have had intercourse with Joe Ed in the Marion trailer when, in fact, he was elsewhere at the time.

An appeal was taken to the circuit court which affirmed the district court's dismissal. In her petition for discretionary review the movant assigns eight points of error. We will discuss only those issues necessary to resolve this appeal.

## I.

MOVANT ASKS IF THE TRIAL COURT ERRED IN RULING THAT MOVANT MUST PRESENT "CLEAR AND CONVINCING EVIDENCE" IN ORDER TO AVOID A SUMMARY JUDGMENT.

■ In a progressive opinion authored by Justice Aker of our Supreme Court in *Fykes v. Clark*, Ky., 635 S.W.2d 316 (1982), Kentucky broke with tradition by overturning the then existing law to the effect that an illegitimate child could not inherit from his putative father. *Fykes* provided that if the putative father died intestate and the paternity of the child was established by clear and convincing evidence, the illegitimate child could inherit from the father as well as the mother.

The question now presented is whether a trial court may apply the "clear and convincing evidence" standard to a summary judgment proceeding. Ordinarily, the "clear and convincing evidence" standard is reserved for trial-type settings. It is the evidential standard to be applied by the trier of the case to the facts presented. The trier must be persuaded by more than a simple preponderance. On the other hand, in a summary judgment proceeding under CR 56.03, the movant's proof must persuade the court "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ The standard under CR 56.03 is more exact. Case law under CR 56.03 tells us that if any material fact is in dispute a summary judgment should not be granted. The court should ascertain if the nonmoving party could strengthen his case at the trial giving him all benefit of any real doubt. If it appears impossible for the nonmoving party to produce evidence at the trial warranting judgment in his favor, only then should the motion be granted. *See Robert Simmons Constr. Co. v. Powers Regulator Co.*, Ky., 390 S.W.2d 901 (1965); *Roberson v. Lampton*, Ky., 516 S.W.2d 838 (1974); and *Harker v. Federal Land Bank of Louisville*, Ky., 679 S.W.2d 226 (1984).

■ Under the circumstances here, the proper testing of the evidence was not applied to the summary judgment. Vicki's proof, standing alone, was sufficient to support a judgment. That's the test and, if applied, it would overcome any motion for summary judgment regardless of how strong the evidence to the contrary might seem. This result must be so because a jury may not believe any of the defense witnesses or proof. Therefore, "clear and convincing" evidence is a standard of persuasion to be applied by the trier of the fact in a trial setting. If applied to a summary judgment proceeding, "clear and convincing" evidence must demonstrate an impossibility under CR 56.03.

■ Did the making of findings of fact and conclusions of law in support of the summary judgment add significance to the

evidence that Joe Ed Chandler was not Joseph Matthew Hibbs' father? No. That the district court entered the tendered findings of fact and conclusions of law submitted by the winning party did not add any dignity or legal significance to the summary judgment. This is because the "clearly erroneous" rule under CR 52 applies solely to "actions tried upon the facts" and not to summary proceedings.

■ Whenever a trial court makes findings to explain the action it has taken or the court's thought process, it is most helpful from the standpoint of appellate review. However, here, the district court judge merely signed what was put in front of him which had been prepared, at his direction, by the winning party. We note that counsel for the respondents properly advised the district court about the propriety of delegating its fact finding function, but to no avail. This shows the dilemma the lawyer is placed in. Doing what the trial court directs, which is contrary to the Civil Rules and case law, will, however, be a short-lived victory. *Pence Mortg. Co. v. Stokes,* Ky.App., 559 S.W.2d 500 (1977), states that findings of fact are not necessary under CR 56.03. Because the findings here were gratuitous on behalf of the district court, the sanctions for reversal under *Callahan v. Callahan,* Ky.App., 579 S.W.2d 385 (1979), are not applicable.

## II.

### DID THE TRIAL COURT ERR IN RULING THAT THE WEBSTER DISTRICT COURT HAD NO JURISDICTION OVER THIS MATTER?

■ The district court, by signing respondents' prepared conclusions of law, concluded that because the primary purpose of the suit was to establish paternity for social security benefits, the proper forum was the Social Security Administration. This conclusion of law is contrary to K.R.S. 406.051, which states, "A district court has jurisdiction of any action brought under this chapter and all remedies for the enforcement of judgment ... for children

born out of wedlock." It was error for the district court to conclude otherwise.

## III.

### DID THE TRIAL COURT ERR IN RULING THAT AN INDISPENSABLE PARTY HAD NOT BEEN JOINED?

■ For the case to proceed safely to judgment under the direction in *Fykes v. Clark, supra,* a personal representative would have to be appointed, if necessary, by the movant's request. Here, the movant proceeded under K.R.S. 396.060 against the parents of the putative father. Section (1) of this statute says:

Heirs and devisees shall be liable for all debts and liabilities of the decedent to the extent of assets received from the decedent in the same manner as the heir would have been liable if the property devised had descended to the heir.

Clearly, it was not the intent of the legislature to have K.R.S. 396.060 used as a vehicle to establish paternity. It is a debt collection statute. Nevertheless, one would have to conclude that the responsibilities inherent to paternity are "liabilities" as contemplated by the statute. Therefore, the respondents, the heirs, may be named as parties although they may be dismissed upon a showing that no assets were obtained by them or that any assets of the decedent had been exhausted for payment of funeral expenses. The district court was in error in dismissing the respondents until such proof was shown.

How does this affect the order that the putative grandparents must submit to blood tests? For as long as the putative grandparents are parties they are required under CR 35.01 to obey the orders of the court by submitting to the examinations. However, if they are witnesses and not parties, CR 35.01 does not apply. Witnesses would not need to submit to blood tests involuntarily. Here, it is uncertain as to how long the respondents will be parties. Naturally, the blood tests already taken may be used in any future trial, but whether it is appropriate to order additional blood

**314**

tests will depend upon the Chandlers' status at the time of the request.

We hold that the trial court erred in its conclusion that an indispensable party had not been joined because the record before us does not fully support such a conclusion.

## IV.

LASTLY, THE MOVANT ASSERTS THAT THE COURT ERRED IN RULING THAT THE WEBSTER DISTRICT COURT LACKED VENUE IN THIS PATERNITY ACTION.

The district court reasoned that because the respondents and putative grandparents were residents of Union County, then the Webster District Court was not the proper venue. K.R.S. 406.151 provides that the paternity action may be brought in the county where the alleged father is present. Here, the alleged father is dead. Or, it may be brought in the county where the alleged father has property. Here, there was no estate or property shown in the record. Or, the action may be brought in the county where the mother resides. Here, that is Webster County. Regardless, CR 12.08 requires that improper venue be pled as a defense if raised in the answer or by motion. Otherwise it is waived. *Jaggers v. Martin*, Ky., 490 S.W.2d 762 (1973). As CR 12.08 was not complied with, the trial court erred in this regard.

In conclusion, it is the opinion of this court that the circuit court was in error by affirming the dismissal of movant's complaint by the district court. The complaint should be reinstated and time allowed for the appointment of a personal representative of Joe Ed Chandler. The respondents are viable parties (defendants) until such time as a determination is made about the "extent of assets received by them," if any, from the decedent.

The order and opinion of the circuit court is reversed.

All concur.