[No. C007011. Third Dist. Nov. 19, 1990.]

WILLIAM M. et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
DANA F., Real Party in Interest.

## COUNSEL

Estelle A. Schleicher, Kimball J. P. Sargeant and Thomas A. Nickens for Petitioners.

No appearance for Respondent.

Pamela A. Bair for Real Party in Interest.

## OPINION

**PUGLIA, P. J.**—William and Bonnie M. are defendants in a paternity action pending in respondent superior court. They petition this court for a writ of mandate directing respondent court to vacate its order that they submit to blood tests. Petitioners (defendants) assert there is no statutory authority for the order. In addition, defendants request this court direct respondent court to vacate its order overruling their demurrer to the complaint and to sustain the demurrer without leave to amend. The demurrer raises the issue whether defendants are proper parties to a paternity action. We shall conclude defendants' contentions must be sustained and shall order a writ to issue.

Dana F., the real party in interest (plaintiff), is the natural mother of Matthew F., who was born on June 6, 1986. Plaintiff claims that William Michael M., Jr. (Michael), defendants' deceased son, is Matthew's father. Plaintiff and Michael were never married and Matthew was never legitimated by Michael. Michael was 23 years of age when he died in December 1986, 6 months after Matthew's birth.

In February 1987, plaintiff filed the action for paternity to which this proceeding is ancillary. The complaint named defendants in their capacity as personal representatives of Michael's estate. Defendants demurred on the basis that no such estate existed and that in any event defendants were not

the personal representatives. The superior court sustained the demurrer with leave to amend. Plaintiff filed a first amended complaint which omitted any reference to Michael's estate and sued defendants as "Parents of [Michael]." Defendants again demurred, asserting the complaint failed to include facts sufficient to state a cause of action and that defendants were not proper parties to a paternity action. The demurrer was overruled and defendants answered the complaint.

In July 1987 and again in May 1989, plaintiff unsuccessfully sought an order directing that defendants submit to blood tests to establish whether Michael was the father of Matthew. Plaintiff renewed her motion in June 1989. The trial court, finding reasonable cause to believe Michael was the father, and citing its "inherent power," ordered defendants to submit to blood tests. This petition followed.

We first consider the trial court's order that defendants submit to blood tests to aid in determining whether defendants' deceased son is the father of Matthew. Defendants contend the trial court was without the authority to enter such an order.

Evidence Code section 892 provides: "In a civil action *in which paternity is a relevant fact,* the court may upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved, and shall upon motion of any party to the action made at a time so as not to delay the proceedings unduly, order the *mother, child, and alleged father* to submit to blood tests . . . ." (Italics added.)

Plaintiff argues there is nothing in this section which prohibits a trial court from ordering someone other than the persons named therein to submit to blood tests. However, given the substantial invasion of privacy occasioned by a compelled submission to blood tests (see *Schmerber* v. *California* (1966) 384 U.S. 757, 767 [16 L.Ed.2d 908, 917, 86 S.Ct. 1826]; *S.A.* v. *M.A.* (D.C.App. 1987) 531 A.2d 1246, 1252), we view the specific application of Evidence Code section 892 only to the mother, child and alleged father as expressing a deliberate policy of limitation. Evidence Code section 892 does not provide authority for the court to order the putative paternal grandparents to submit to blood tests. (See *Manuel* v. *Spector* (Tex.Ct.App. 1986) 712 S.W.2d 219, 223.)

Nor is plaintiff aided by Code of Civil Procedure section 2032, subdivision (a), which provides in pertinent part: "Any party may obtain discov-

ery, subject to the restrictions set forth in [Code of Civil Procedure] Section 2019, by means of a physical or mental examination of (1) a party to the action, (2) an agent of any party, or (3) a natural person in the custody or under the legal control of a party, in any action in which the mental or physical condition (including the blood group) of that party or other person is in controversy in the action."

Code of Civil Procedure section 2032, subdivision (a) provides a procedure by which a party whose physical condition is in dispute and is a material issue may be required by another party to the action to submit to an examination. (See 2 Witkin, Cal. Evidence (3d ed. 1986) § 1544, p. 1497.) Defendants' physical condition or blood group is not in dispute. Rather, it is the blood group of their deceased son which is in controversy and a material issue in the paternity action.[1] Any testing of defendants' blood is collateral to the issue before the trial court. (Accord *Manuel* v. *Spector, supra,* 712 S.W.2d at p. 223.)[2]

More importantly, Code of Civil Procedure section 2032 presupposes the parties who may be required to submit to examination are proper parties to the action. Civil Code section 7008 suggests the only people who are proper parties defendant to a paternity action are the mother, child and any person presumed or alleged to be the father.[3] Defendants are no more proper parties to a paternity action than are Michael's siblings, cousins or aunts and uncles.

In this regard we note the first amended complaint states no facts upon which a cause of action might be established and in fact seeks absolutely no relief as against defendants. Defendants' demurrer to the first

---

[1] Obviously defendant's deceased son is neither the "agent of" nor "in the custody or under the legal control of" defendants and therefore is not an "other person" within the meaning of Code of Civil Procedure section 2032, subdivision (a), controversy over whose physical condition can trigger that section.

[2] The record contains the declaration of a medical expert averring the substantial certainty to which a blood test of defendants could establish whether Michael was or was not the father of Matthew. A declaration of Doctor Richard Cohen states that by testing defendants' blood, and then comparing blood samples taken from plaintiff and the child, "[w]e could probably settle the matter [of paternity]. However, this begs the critical question. The threshhold issue is whether there is any authority vested in the trial court allowing it to order the putative grandparents to submit to blood testing."

[3] Civil Code section 7008 provides in relevant part: "The child may, if under the age of 12 years, and shall, if 12 years of age or older, be made a party to the action. If he is a minor and a party to the action he shall be represented by a guardian ad litem appointed by the court. The natural mother, each man presumed to be the father under [Civil Code] Section 7004, and each man alleged to the be the natural father, may be made parties and shall be given notice of the action . . . ."

amended complaint which was grounded on both the failure to state a cause of action and improper joinder of parties should have been sustained without leave to amend. Paternal grandparents, either in their individual capacity or as parents of a deceased putative father, are not proper parties defendant to an action to establish paternity.

Plaintiff notes the provisions of Civil Code section 7006, subdivision (c), permit the parents of the deceased presumed or putative father to bring an action against the mother and child to establish paternity.[4] Plaintiff argues it would be a denial of due process and equal protection to allow the putative grandparents to maintain a paternity action and yet hold Civil Code section 7008 (see fn. 3, *supra*) precludes the mother from asserting her own paternity action as against the putative grandparents. Plaintiff cites no authority for her claim.

■ Moreover, all presumptions are in favor of the validity of statutes and a classification adopted by the Legislature will not be rejected unless it is plainly arbitrary. (*Borden's Farm Products Co.* v. *Baldwin* (1934) 293 U.S. 194, 209-210 [79 L.Ed. 281, 288-289, 55 S.Ct. 187].) ■ Plaintiff's claims fail because the child's mother is not similarly situated with the parents of the child's deceased putative father. The putative grandparents may have an interest in establishing a legal relationship with a child allegedly fathered by their deceased son. Although the grandparents do not have the absolute right to require visitation with the child, they do have a limited entitlement to seek visitation rights with their grandchildren. (Civ. Code, §§ 4351.5, subd. (b), 4601.) Thus, allowing the putative grandparents to maintain a paternity action allows for the creation of certain rights accruing directly in the grandparents. On the other hand, grandparents have no involvement in, nor any responsibility for, the conception of the child, nor do grandparents have any legal responsibilities for the support or rearing of the child. (See Civ. Code, § 208.5.) There thus are no rights which can be created in the child enforceable directly against the grandparents.

There is ample justification for allowing putative grandparents to maintain an action for paternity but refusing to allow them to be made defend-

---

[4] Civil Code section 7006, subdivision (c) provides in relevant part: "An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under [Civil Code] Section 7004 or whose presumed father is deceased may be brought by the child or personal representative of the child, the State Department of Social Services, the mother or the personal representative or a parent of the mother if the mother has died or is a minor, a man alleged or alleging himself to be the father, or the personal representative *or a parent of the alleged father if the alleged father has died* or is a minor." (Italics added.)

ants in a paternity action. Because the putative grandparents' interest in the question of paternity is not mandatory, and because their legal rights and obligations established by a finding of paternity are minimal compared to those of the putative father, the Legislature could reasonably decline to make putative grandparents susceptible to suit as defendants in a paternity action but nonetheless allow them to assert an action for paternity in appropriate circumstances.

The repercussions of allowing putative grandparents to be sued in a paternity action and ordered to submit to blood tests extend far beyond the instant case. If Michael had no living parents, we might well be addressing identical issues involving Michael's brothers and sisters, cousins or other relatives. Given these troubling implications the decision of who may properly be made a party defendant in a paternity action subject to mandatory blood testing is one for the Legislature.[5] ▪ ▪ ▪ ▪ Under existing laws, defendants are not proper parties to a paternity action and, a fortiori, cannot be ordered to submit to blood tests to aid in a determination of paternity.[6]

Let a peremptory writ of mandate issue directing respondent Sacramento Superior Court to vacate its orders (1) requiring defendants to submit to

---

[5] We have found only one state which by statute has authorized the blood testing of putative grandparents for purposes of determining paternity. Minnesota Statutes, section 257.62, subdivision (1) (effective June 10, 1983 [Minn. Stats. 1983, ch. 308, §§ 8, 9; see *Voss* v. *Duerscherl* (Minn.Ct.App. 1986) 384 N.W.2d 499, 500-501]) provides in relevant part: "The court may, and upon request of a party shall, require the child, mother, or alleged father to submit to blood tests. If the alleged father is dead, the court may, and upon request of a party shall, require the decedent's parents or brothers and sisters or both to submit to blood tests. However, in a case involving these relatives of an alleged father, who is deceased, the court may refuse to order blood tests if the court makes an express finding that submitting to the tests presents a danger to the health of one or more of these relatives that outweighs the child's interest in having the tests performed. Unless the person gives consent to the use, the results of any blood tests of the decedent's parents, brothers, or sisters may be used only to establish the right of the child to public assistance including but not limited to social security and veterans' benefits." (Italics omitted.)

Former Minnesota Statutes, section 257.62 was almost identical to Evidence Code section 892 in providing only that the mother, child and alleged father could be ordered to submit to blood tests. The amendment of the Minnesota statute to encompass grandparents is consistent with our view that the issue is one for the Legislature to decide. (See Minn. Stats. 1980, ch. 589, § 12.)

[6] Plaintiff argues defendants' request that we direct the trial court to sustain their demurrer to the first amended complaint without leave to amend should be denied on the basis of laches. We decline. While defendants could have sought a writ following the order overruling their demurrer to the complaint, they were not required to do so. Moreover, the failure of a complaint to contain facts sufficient to state a cause of action is a jurisdictional defect that can be raised at any point in the proceedings. (See *Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, 710 [136 Cal.Rptr. 871].) Therefore, plaintiff cannot have been prejudiced by the delay. (See *Ragan* v. *City of Hawthorne* (1989) 212 Cal.App.3d 1361, 1368 [261 Cal.Rptr. 219].)

blood tests and (2) overruling defendants' demurrer to the complaint. The court is directed to enter a new order sustaining the demurrer as to defendants without leave to amend. The stay is vacated and the alternative writ, having served its purpose, is discharged. Defendants are to recover costs.

Sparks, J., and Scotland, J., concurred.

A petition for a rehearing was denied December 14, 1990, and the opinion was modified to read as printed above.