589 So.2d 474 (1991)
Alana SUDWISCHER
v.
ESTATE OF Paul HOFFPAUIR, et al.
No. 91-CC-0515.
Supreme Court of Louisiana.
October 31, 1991.
John F. Craton, Crowley, for applicant.
Stephen A. Stefanski, Crowley, for respondents.

ON REHEARING
WATSON, Justice.
This case concerns the constitutional balance between plaintiff's interest in proving filiation and an heir's right to refuse a blood sample.
Plaintiff, Alana Benoit Sudwischer, sued to establish filiation to Paul C. Hoffpauir, alleged to be her deceased natural father. LSA-C.C. art. 209(B).[1] Hoffpauir died intestate, survived by his widow; an adopted son, Paul C. Hoffpauir, Jr.; and a legitimate daughter, Rosemary Hoffpauir Schuh. Alana seeks a compelled blood test of Rosemary to aid in proving her filiation. The trial court denied the motion to compel because LSA-R.S. 9:396 does not authorize blood tests of siblings. The court of appeal, third circuit, denied a writ, stating that the judgment of the trial court was correct. This court ordered Rosemary's blood tested but granted a rehearing for further consideration of the issues.
LSA-R.S. 9:396 postulates the existence of an alleged living father and does not *475 statutorily authorize the testing sought in this case. In context, the statute is directed at establishing paternity for purposes of child support. There is no indication that the statutory language expresses a deliberate policy of limitation.
At the time of Alana's birth, her mother was married to Davis Benoit, but Benoit never lived with them in a family unit. Benoit was in prison, both when Alana was born (1951) and during the preceding year (1950). Although Benoit's name is on Alana's birth certificate, they have never had any association. Alana's legal status as Benoit's child does not preclude her from proving filiation to Hoffpauir. Griffin v. Succession of Branch, 479 So.2d 324 (La.1985).
Alana's statutory burden of proof is "clear and convincing evidence." This standard of proof is more stringent than the preponderance standard which generally applies in civil cases. See Fykes v. Clark, 635 S.W.2d 316 (Ky.1982) and Chester for Chester v. Secretary of Health, 808 F.2d 473 (6th Cir.1987) (applying a clear and convincing standard). Compare Morales on behalf of Morales v. Bowen, 833 F.2d 481 (3d Cir.1987) (applying a preponderance standard). Although there is deposition testimony that Hoffpauir recognized Alana as his daughter, scientific testing could corroborate this evidence. "The accuracy and infallibility of the DNA test are... remarkable." Alexander v. Alexander, 42 Ohio Misc.2d 30, 537 N.E.2d 1310, 1314 (1988).
In deposition, Dr. J. Craig Cohen, an expert in DNA testing, testified that it is possible to identify any relationship between Alana and Hoffpauir. See Thompson and Ford, DNA Typing: Acceptance and Weight of the New Genetic Identification Test, 75 Va.L.Rev. 45 (1989). DNA testing of Alana, the other children born to Alana's deceased mother and Rosemary would establish the probability of relationship between Alana and Rosemary. Dr. Cohen can determine that they are probably related or probably not related. The probability index could be as low as one in five or as high as one in a hundred thousand. Each test requires a teaspoon of blood. According to Dr. Cohen, blood testing of necrotic tissue from Hoffpauir is not feasible. Compare In re Estate of Greenwood, 402 Pa.Super. 536, 587 A.2d 749 (1991) (testing was possible because the coroner had blood and tissue samples from the decedent). It is alleged that Alana's known siblings do not object to being tested. See Aroonsakul v. Flanagan, 124 Ill. App.3d 626, 464 N.E.2d 1091, 80 Ill.Dec. 108 (1984) (illustrating the probative value of sibling blood tests).
In People v. Lipscomb, 215 Ill.App.3d 413, 158 Ill.Dec. 952, 574 N.E.2d 1345 (1991), complicated testing of blood and semen allowed an expert to describe defendant's profile as one in seven billion. This DNA testing would not achieve that accuracy. However, Rosemary's testing would produce relevant evidence, which could be considered by the trier of fact with other evidence in evaluating Alana's claim. LSA-C.C.P. art. 1422 provides:
Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, ...
Rosemary Hoffpauir Schuh was not originally a party to this lawsuit, but she has been served with a rule to show cause why her blood should not be tested. She is a forced heir to her father's estate, which remains under administration, and she accepted her father's succession unconditionally after this suit was filed. Compare William M. v. Superior Court (Dana F.), 225 Cal.App.3d 447, 275 Cal.Rptr. 103 (1990) (no estate existed). The attorney for the estate has filed briefs on her behalf, stating that Rosemary strongly opposes a blood test. There is no allegation that Rosemary's representation by the estate's executors and attorney is inadequate. The requirements of notice and an opportunity to be heard have been met.
The state's interest in the orderly disposition of estates may bar assertion of paternity claims after distribution of an estate. Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). However, *476 Hoffpauir's estate is under administration and Alana's claim is timely. Reed v. Campbell, 476 U.S. 852, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986). The inheritance rights of legitimate and illegitimate children are entitled to equal protection of the law. Succession of Brown, 388 So.2d 1151 (La. 1980). Alana has a constitutional right to prove filiation to a deceased father. Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). That right must be weighed against the invasion of Rosemary's privacy presented by a compelled blood test. LSA-Const. art. I, § 3. See Aleinikoff, Constitutional Law in the Age of Balancing, 96 Yale L.J. 943 (1987). To compel a blood test of Rosemary, Alana's interest in identifying her father must outweigh Rosemary's expectation of privacy.
Although she bears the Benoit name, Alana has never enjoyed a father/daughter relationship with Benoit. She has an overriding emotional and financial interest in knowing her father's identity. Rosemary has a financial interest in opposing Alana's claim but has asserted no physical or religious obstacles to a blood test. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The invasion of Rosemary's privacy is minimal. Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957). Rosemary has the alternative of conceding a relationship to Alana. Under these circumstances, the trial court erred in denying Alana's motion to compel the DNA testing of Rosemary's blood.
For the foregoing reasons, the judgment of the trial court is reversed and the motion is granted. The matter is remanded for further proceedings.
REVERSED; MOTION GRANTED; REMANDED.
LEMMON, J., concurs and assigns reasons.
DENNIS, J., dissents with reasons.
CALOGERO, C.J., dissents for reasons assigned by DENNIS, J.
COLE, J., dissents for reasons assigned.
LEMMON, Justice, concurring.
La.Rev.Stat. 9:396A, a special statute pertaining to determinations of paternity, provides:
Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child, and alleged father to submit to the drawing of blood samples and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.
This statute provides that in certain situations the trial judge "shall order the mother, child and alleged father to submit to the drawing of blood samples." The statute does not purport to prohibit the judge's ordering blood tests in other situations. Therefore, the statute is not controlling in this case, and the general rules of discovery must be applied.
La.Code Civ.Proc. art. 1422 permits discovery regarding any non-privileged matter that is relevant to the subject matter of the pending action. The information sought is relevant to plaintiff's claim of filiation with the decedent. While the information, depending on the results, may not be admissible at trial, the present issue is discoverability and not admissibility.
Because the requested discovery involves an invasion of decedent's legitimate daughter's privacy, the mover should be required to make a prima facie showing of filiation in order to obtain the requested order.[1] *477 Once the prima facie showing is made, this becomes a contest between competing claimants to the succession assets.[2] Unless the legitimate daughter has some compelling reason to resist the taking of a small sample of her blood (such as a physical infirmity), fundamental fairness prohibits her from keeping this possibly relevant evidence from the court which is to decide plaintiff's claim that has been supported by a prima facie showing of filiation.[2] The state has a legitimate interest in insuring this fundamental fairness by ordering the relevant testing of either or both claimants.
DENNIS, Justice, dissenting.
I respectfully dissent. The majority correctly recognizes that this case involves constitutional balancing, but does not focus on the constitutional rights genuinely at issue. The conflict set up by the majority opinion consists of Rosemary Hoffpauir Schuh's right not to have a blood test performed on her versus plaintiff Alana Benoit Sudwischer's right to prove her filiation to her deceased father. However, as will be shown below these are not the rights that are in conflict in this case.
The majority alleges that "Alana has a constitutional right to prove filiation to a deceased father. Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977)." However, Trimble does not extend so broadly. The court in Trimble dealt with the issue of whether a state could, under the equal protection clause of the Fourteenth Amendment, discriminate against illegitimate children by denying them rights in their father's succession. The opinion does not recognize a constitutional right to inherit property or to filiate per se. The court merely provided that an illegitimate child should equally enjoy whatever rights a legitimate child may have in the succession of her father. Trimble had standing to assert these rights only because she was able to show affirmative state action which impermissably infringed upon her right to be treated equally under the law. See also Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978).
On the other hand, as conceded by the majority, Schuh has constitutionally protected privacy and due process rights under both the federal and state constitutions which protect her from unreasonable invasions or intrusions of her body. See Cruzan v. Director, Missouri Dept. of Health, ___ U.S. ___, 110 S.Ct. 2841, 2856, 111 L.Ed.2d 224 (1990) (O'Connor, J., concurring) ("Because our notions of liberty are inextricably entwined with our idea of physical freedom and self-determination, the Court has often deemed state incursions into the body repugnant to the interests protected by the Due Process Clause"); see also Hondroulis v. Schuhmacher, 553 So.2d 398, 414-15 (La.1989). This right of privacy has evolved over several decades. The Supreme Court first recognized a right of privacy based on the United States Constitution in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). This right of privacy has been described as "the most comprehensive of rights and the right most valued by civilized man." Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 1248, 22 L.Ed.2d 542 (1969) (citing Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572-73, 72 L.Ed. 944 (1929) (Brandeis, J., dissenting)). In Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 876-77, 51 L.Ed.2d 64 (1977), the Supreme Court specifically recognized that the right of privacy encompasses at least two different kinds of interests, "the individual interest in avoiding disclosure of personal matters, and ... the interest in independence in making certain kinds of important decisions." *478 In recent cases, the court has discussed the privacy right as one of those fundamental rights that are "`implicit in the concept of ordered liberty' such that `neither liberty nor justice would exist if [they] were sacrificed.'" Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140 (1986) (quoting Palko v. Connecticut, 302 U.S. 319, 325-26, 58 S.Ct. 149, 82 L.Ed. 288 (1937)). See Roe v. Wade, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973).
Under the Supreme Court's opinion in Flagg Bros., Inc. v. Brooks, supra, in order to prove a violation of rights guaranteed under the Fourteenth Amendment, a party must show that the party depriving her of her right acted under color of the challenged statute, and that the violator's actions are properly attributable to the state. Id., 436 U.S. at 156, 98 S.Ct. at 1733. However, Sudwischer has failed to allege the existence of a statute which impermissably infringes on her right to pursue her claim of legitimacy. There has been no affirmative act on the part of the state to interfere with her right to equal protection of the law. Absent state action, then, Sudwischer has no constitutional right which can be raised in this matter to balance against the rights of Schuh. Schuh, however, can show state action. An affirmative order of a district court forcing her to submit to a blood test would meet even the most conservative notions of state action espoused by the U.S. Supreme Court in Flagg Bros.
Schuh's constitutional rights, however, are not automatically immune to every state action in this area. In determining the propriety of state interference, the U.S. Supreme Court and this court have determined that where the right of personal privacy is involved, state interference may be justified only by compelling state interests, and must be narrowly drawn to express only those interests. Carey v. Population Services Intern., 431 U.S. 678, 685, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977); Hondroulis v. Schuhmacher, supra, at 415.
Accordingly, the proper balance to strike is the state's interest in forcing Schuh to submit to a blood test versus Schuh's own privacy interest in not submitting to a blood test. See Cruzan, 110 S.Ct. at 2853; see also Breithaupt v. Abram, 352 U.S. 432, 439, 77 S.Ct. 408, 412, 1 L.Ed.2d 448 (1957) ("As against the right of an individual that his person be held inviolable ... must be set the interests of society"). The state's interest here can be characterized as limited and even minimal. As noted by the majority, the purpose of the statute was originally for the purpose of establishing filiation for child support purposes. Because the support obligation is owed only by a parent, it would be stretching the imagination to assert that the state would intend that siblings and other collaterals would be subjected to court-imposed blood tests. If the statute can be used to support claims of filiation for establishment of rights to a succession, Sudwischer must still explain why the Legislature has declined to give expansive remedies to the illegitimate child by providing explicitly in the act that only "the mother, child, and alleged father [are required] to submit to the drawing of blood samples." La.R.S. 9:396 is based on the Uniform Act on Blood Tests to Determine Paternity. Schuh does not fall within the purview of the statute by its express terms, nor is she a party to the filiation action. Sudwischer has not offered anything to indicate that the legislature intended the act to extend to other relatives not enumerated in the act. Furthermore, other states interpreting the uniform act have likewise refused to extend the act to persons other than the alleged father, mother, and child, see e.g., Manuel v. Spector, 712 S.W.2d 219 (Tex.App. San. Ant.1986); In re Mengel, 287 Pa.Super. 186, 429 A.2d 1162 (1981), or other non-parties, see Voss v. Duerscherl, 425 N.W.2d 828 (Minn.1988); Hibbs v. Chandler, 684 S.W.2d 310 (Ky.App.1985).
In fact, the state interest in discouraging multiple paternity actions is well established in our law. See La.C.C. arts. 184-209. While this court has recognized the illegitimate's ability to filiate with more than one father, Griffin v. Succession of *479 Branch, 479 So.2d 324 (La.1985), the right to filiate for succession rights alone has never been recognized by this court, or any other court, as rising to the status of a constitutional right. In fact, the ability to filiate with multiple fathers has been criticized by other courts, see e.g., Matter of Estate of Schneider, 150 Wis.2d 286, 441 N.W.2d 335, 337 (Wisc.App.1989), and to claim that the state has an interest in allowing multiple filiations is a policy not only disavowed by our civil code but is in direct conflict with the policies of every other state of the union.
Considering the limited scope of the act and the fact that Schuh is not a party to the filiation proceeding, any state interest in insuring that Sudwischer can prove her filiation to the deceased is minimal at best. Accordingly, in balancing this reduced state interest reflected in the narrowly tailored act against Schuh's constitutionally protected privacy rights, the latter must necessarily prevail.
For these reasons, I respectfully dissent.
COLE, Justice, dissenting.
I previously dissented from the order of this court requiring Rosemary Hoffpauir Schuh to submit to a blood test. The majority, on rehearing, again reverses the trial court and grants the motion to compel submission to the test, thus affirming our prior order. Again, I dissent.
As already stated, the majority's action equates to judicial legislation, ignoring the admonition of Article 1 of our Civil Code. "The sources of law are legislation[1] and custom."
La.R.S. 9:396 is explicit and controls. It authorizes court-ordered blood testing of "the mother, child, and alleged father" in cases in which paternity is relevant. It does not authorize the blood testing of an alleged sibling to prove filiation. For these reasons, and for the additional reasons assigned by Justice DENNIS in his dissent, I respectfully dissent.
NOTES
[1] Article 209(B) provides "A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged deceased parent by clear and convincing evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article."
[1] Here, the mover arguably established that showing by deposition testimony that decedent had acknowledged her as his daughter. Even if this showing was insufficient, this court, after pronouncing the requirement of a showing by this decision, can remand for an evidentiary hearing on this requirement.
[2] While the succession and not the legitimate daughter is the technical party at this stage of the proceeding, there appears little doubt that the legitimate daughter is resisting plaintiff's claim to the succession assets (valued at $2,000,000) through the succession representative and that she has a substantial interest in defeating the claim.
[1] Legislation is a solemn expression of legislative will. La.C.C. art. 2.