2004 VT 118

### In re ESTATE OF Alan B. MURCURY

[868 A.2d 680]

No. 04-013

¶ 1. December 13, 2004. The question presented is whether a child born out of wedlock who seeks to inherit from a putative father is constitutionally entitled to establish paternity through genetic testing after the twenty-one year limitations period for the bringing of a parentage action has expired. We hold that the statutory limit offends neither the Vermont nor the United States Constitutions. Accordingly, we affirm the superior court judgment.

¶ 2. Decedent Alan B. Murcury died intestate on July 5, 2002. One week later, petitioner Robin Morris filed a petition in the Franklin Probate Court to open an intestate estate, alleging that he was decedent's son. The probate court appointed petitioner's attorney as administrator of the estate. Shortly thereafter, defendants Ann L. Newitt and Jane Murcury filed a motion for relief from judgment, alleging that they were decedent's sisters and that, to the best of their knowledge, decedent did not have any children. Following a hearing, the court issued a written decision, granting the

motion. Although petitioner, then thirty-eight years old, introduced a birth certificate naming decedent as his father, the court noted that the information on the birth certificate came from petitioner's mother, who had never married decedent; that there was no evidence decedent had ever seen the birth certificate; that decedent had denied paternity in an Agreement and Release executed near the time of petitioner's birth; and that decedent had never openly acknowledged petitioner as his child, or been adjudicated his father through a timely parentage action under 15 V.S.A. § 302.[1]

¶ 3. Petitioner also requested an opportunity to obtain and present evidence of genetic testing of decedent's sisters to establish decedent's paternity. The probate court ruled, however, that 14 V.S.A.

---

[1] Section 302 provides, in its entirety, as follows:

(a) An action to establish parentage in cases where parentage has not been previously determined either by an action under this subchapter or by adoption, may be brought by a child who has attained the age of majority; the personal representative of a minor child; a person alleged or alleging himself or herself to be the natural parent of a child or that person's personal representative if he or she is a minor, incompetent, or has died; or the office of child support when an assignment of the right to support is in effect pursuant to section 3902 of Title 33 or when a parent has applied for IV-D services.

(b) An action to establish parentage may be brought at any time after birth, but shall not be brought later than three years after the child reaches the age of majority.

§ 553(b) provided the exclusive means of establishing paternity, and that the court was statutorily unauthorized to accept such evidence. The statute provides, in pertinent part, that "[a]n illegitimate child shall inherit from or through his father as if born in lawful wedlock, under any of the following conditions: (1) The father has been declared the putative father of the child under 15 V.S.A. § 306. (2) The father has openly and notoriously claimed the child to be his own." In the absence of proof of either circumstance, the court concluded that petitioner had failed to establish a right to inherit as the nonmarital child of decedent.

¶ 4. Petitioner appealed to the superior court on the question whether § 553 barred the introduction of genetic testing, and if so whether such a bar violated his constitutional rights. Petitioner subsequently filed two additional motions for genetic testing of decedent's sisters, which the court denied. The parties then filed cross-motions for summary judgment. In October 2003, the court issued a written decision, granting defendants' motion and denying petitioner's. The court concluded that under § 553 proof that the decedent has either acknowledged paternity or been adjudicated the father through a timely action under 15 V.S.A. § 302 represent the exclusive means of establishing a nonmarital child's right to inherit, and that the statute violates neither the United States nor the Vermont Constitutions. This appeal followed.

¶ 5. Petitioner frames the issue on appeal as "[w]hether the preclusion of genetic testing evidence by 14 V.S.A. § 553(b) discriminates against illegitimate children in violation of" the United States and Vermont Constitutions. The actual issue is more limited, however, as the intestate-succession statute, § 553(b), plainly does *not* prohibit nonmarital children from obtaining court-ordered genetic testing to determine paternity. Sec-

tion 553(b)(1) provides that a child born out of wedlock may inherit from his or her father when there has been an adjudication of paternity under 15 V.S.A. § 306, and the paternity statute specifically authorizes the court to order "genetic testing for the determination of parentage." *Id.* § 304(a). A parentage action may be commenced any time after birth but not later than three years after the child reaches the age of majority, *id.* § 302(b), and may be brought by the child or on the child's behalf by a natural parent or a personal representative. Thus, the effective window for the filing of a parentage action and motion for genetic testing by a nonmarital child is twenty-one years from the child's birth. Nothing in the statute, moreover, precludes the simultaneous filing of a timely probate petition and a posthumous parentage action, together with a motion for genetic testing of the deceased, where the putative father dies before the child has reached the statutory age limit.

¶ 6. The more narrow question presented by this case, therefore, concerns the constitutionality of the statutory requirement that a nonmarital child who seeks to inherit from a putative father must establish paternity through a timely parentage action and motion for genetic testing before the child reaches the age of twenty-one. Since petitioner was nearly thirty-eight years old when he filed the instant action, he is barred from establishing paternity unless — as he asserts — he is *constitutionally* entitled to a genetic determination of paternity beyond the statutory time limit. In addressing this issue, we are guided by a line of United States Supreme Court decisions subjecting statutory classifications based on illegitimacy to a heightened level of scrutiny under the Fourteenth Amendment. While not "suspect" or subject to the "most exacting scrutiny," *Trimble v. Gordon*, 430 U.S. 762, 767 (1977), such classifications must be "substantially re-

lated to permissible state interests." *Lalli v. Lalli*, 439 U.S. 259, 265 (1978); see also *Clark v. Jeter*, 486 U.S. 456, 461 (1988) (classification based on marital status of child's parents must be "substantially related to an important governmental objective"). This has been characterized as "intermediate" scrutiny under the categorical scheme utilized by the federal courts. See K. Hauser, *Inheritance Rights for Extramarital Children: New Science Plus Old Intermediate Scrutiny Add Up to the Need for Change*, 65 U. Cin. L. Rev. 891, 909 (1997).

¶ 7. The seminal Supreme Court decisions on the right of nonmarital children to inherit from their putative fathers are *Trimble* and *Lalli*. *Trimble* invalidated an Illinois law that effected a complete disinheritance of children born out of wedlock who were not legitimated by the subsequent marriage of their parents. Of the two interests advanced by the state, the Supreme Court held that the first — the promotion of "legitimate" family relationships — could not validly be accomplished by penalizing the children born of the relationship, and the second — the "orderly distribution of property at death" — could be accomplished by means short of a "complete exclusion." *Trimble*, 430 U.S. at 768, 771. The Supreme Court was careful to point out, however, that problems of proving paternity "might justify a more demanding standard for illegitimate children claiming under their fathers' estates" than legitimate children, and acknowledged that the structuring of an "appropriate legal framework" for the "orderly distribution of property at death" was "a matter particularly within the competence of the individual States" and therefore entitled to "substantial deference." *Id.* at 770-71.

¶ 8. Just one year after *Trimble*, the high court was presented with just such a "legal framework." The New York statute at issue in *Lalli* permitted nonmarital

children to inherit from their fathers only if there had been an adjudication of paternity during the lifetime of the father. A plurality of the Court upheld the scheme on the ground that it furthered a legitimate state interest in ensuring an accurate paternity determination in a judicial forum during the father's lifetime. 439 U.S. at 271. Four Justices dissented, arguing that the exclusion of a child — such as the plaintiff in *Lalli* — openly acknowledged by the decedent to be his own was unjustified by any state interest in the orderly distribution of estates. *Id.* at 277-79 (Brennan, J., dissenting). Two additional cases involving the rights of nonmarital children in a slightly different context are also of interest. In *Mills v. Habluetzel*, 456 U.S. 91, 99-101 (1982), the Supreme Court invalidated a Texas statute providing that a paternity action by a nonmarital child for the purpose of obtaining child support must be brought within one year of the child's birth. The Court held that the one-year limit was unconstitutional in that it failed to provide a "reasonable opportunity for those with an interest in such children to assert claims on their behalf," and was not of sufficient length to further any state interest in avoiding "stale or fraudulent claims." *Id.* at 99. *Pickett v. Brown*, 462 U.S. 1, 18 (1983), decided the following year, invalidated on identical grounds a similar Tennessee statute imposing a two-year statute of limitations for paternity actions.

¶ 9. Assessed in light of these decisions, Vermont's statutory scheme plainly meets federal constitutional standards. Indeed, the means accorded nonmarital children to establish paternity in Vermont are broader than those provided under the New York statute upheld in *Lalli* in two ways: parentage actions may be commenced in some circumstances after the death of the putative father, and paternity may be independently established through proof that the father "openly and notoriously claimed the child to be his own." 14 V.S.A. § 553(b)(2). This alternative means of proof was the very method advocated by the *Lalli* dissenters as necessary to the New York statute's validity. Petitioner argues, nevertheless, that the rationale on which the Court relied in *Lalli* — ensuring accuracy by affording the putative father an opportunity to deny paternity in a judicial forum — does not apply to these additional methods. This is correct, but irrelevant. The state is obviously free to broaden the class of nonmarital children entitled to inherit where, as here, it has evidently determined that the state's interests in accuracy and fairness are adequately served. As Justice Brennan observed, when a father has openly acknowledged a child to be his own, there is little "difficulty of proof [or] opportunity for fraud or error." *Lalli*, 439 U.S. at 278 (Brennan, J., dissenting) (internal quotation omitted). Furthermore, the state's paramount interest in ensuring the support of a minor child by his or her natural parent amply supports a scheme that effectively permits a nonmarital child under the age of twenty-one to file a parentage action and probate petition upon the putative father's death, despite the difficult evidentiary issues (discussed more fully below) that may arise by suits instituted after a putative father's death. See *Mills*, 456 U.S. at 103 (O'Connor, J., concurring) (state has strong interest in ensuring that natural fathers provide support for nonmarital children); *Lach v. Welch*, 1997 WL 536330, at *7 (Conn. Super. Ct. 1997) (interest in providing financial support for minor child supported court's order granting nonmarital child's motion for exhumation of body of putative father for purpose of genetic testing). Accordingly, there is no doubt

that Vermont's statute passes muster under the federal constitution.[2]

¶ 10. Petitioner's principal argument is that advances in genetic testing have rendered obsolete any justification for a limit on the inheritance rights of nonmarital children based on an interest in preventing the bringing of stale or fraudulent claims. Petitioner claims that genetic testing of the nonmarital child, the putative father, or relatives of the father can establish to a statistical certainty the issue of paternity. Thus, he asserts that the statutory time limit bears no "reasonable and just relation to the governmental purpose," as required by the Common Benefits Clause of the Vermont Constitution, and must be declared constitutionally invalid. *Baker v. State*, 170 Vt. 194, 214, 744 A.2d 864, 879 (1999).

---

[2] Petitioner suggests in passing that the statute of limitations for bringing a parentage action is unconstitutionally truncated as applied to him, because 15 V.S.A. § 302(b) went into effect in 1984, when he was nineteen. Petitioner overlooks the fact that the statutory predecessor to § 302(b), 15 V.S.A. § 331, enacted in 1967, generally authorized paternity actions against a putative father, and while it contained no specific limitations period, the general six-year statutory period would have applied. See 1926-28 Op. Att'y Gen. 45 (opining that "proceedings in bastardy must be instituted within six years after the cause of action accrues"). Petitioner makes no effort to explain the failure to bring any action during this initial six-year period, or under the additional two-year period provided by the amended statute, or at any time during the next twenty years when his putative father was still alive and might have acknowledged paternity, or voluntarily submitted to genetic testing. Accordingly, we discern no merit to the claim.

¶ 11. In applying the Common Benefits Clause, we look to "that part of the community disadvantaged by the law," *id.* at 213, 744 A.2d at 878, "the significance of the benefits and protections" at issue, *id.* at 214, 744 A.2d at 879, whether the law promotes the government's objective, and whether it is significantly underinclusive or overinclusive. *Id.* Here, there is no doubt that the class of nonmarital children affected by the statute has long been subject to invidious discrimination, see *Jeter*, 486 U.S. at 461, and that intestate succession is a significant benefit. See *MacCallum v. Seymour's Administrator*, 165 Vt. 452, 459, 686 A.2d 935, 939 (1996) ("Although testators may make irrational and discriminatory choices in the distribution of their property, when the choice is made by the government, the obligation to afford all persons equal protection of the laws arises.") (internal quotation omitted). We also accept for purposes of decision petitioner's claims concerning the accuracy of current methods of genetic testing.

¶ 12. We are not persuaded, however, that the statutory time limit fails, on balance, to promote reasonable and just governmental objectives. The twenty-one year limit provides ample opportunity for a child or the child's representative to file a parentage action while simultaneously enhancing the likelihood that it will be brought during the putative father's lifetime. We perceive several interests advanced by this policy, including the obvious one of ensuring the putative father's availability for genetic testing. While the court may possess the authority to order genetic testing in a case where the putative father dies before expiration of the statutory limit by means of an order of disinterment if necessary, the state surely has a legitimate interest in seeing that such orders are not routinely required by establishing a statute of limitations that requires parentage actions while the

putative father is likely to be alive.[3] "By tradition ... the law does not favor removal or disturbance of a decedent's remains based upon a private right." *Camilli v. Immaculate Conception Cemetery*, 583 A.2d 417, 418 (N.J. Super. Ct. Ch. Div. 1990). The proper and orderly disposition of decedent's remains — free from last-minute attempts to obtain a blood or tissue sample or subsequent applications to disinter the body — is a significant state interest served by the statute.

¶ 13. Petitioner claims that such unseemly expedients may be easily avoided through the testing of a decedent's relatives (petitioner here sought to test the decedent's two sisters), a procedure that allegedly yields equally accurate test results. Even assuming that petitioner's claim of accuracy is correct, and that a court could order the testing of decedent's relatives absent express legislative authority,[4] the argument overlooks two

substantial countervailing interests. First, compelled genetic testing of a decedent's living relative represents a substantial invasion of privacy. See *William M. v. Superior Court*, 275 Cal. Rptr. 103, 104-05 (Ct. App. 1990) ("given the substantial invasion of privacy occasioned by a compelled submission to" genetic tests, court construed statute authorizing genetic testing of mother, child and alleged father "as expressing a deliberate policy of limitation" precluding order requiring putative father's grandparents to submit to tests). By requiring a paternity action and motion for genetic testing during the first twenty-one years of a child's life — when the putative father is more likely to be alive — the statute significantly limits the need to resort to such disfavored methods.

¶ 14. Petitioner's argument also oversimplifies the potential evidentiary issues that might arise in a parentage action. There may, for example, exist facts known only to the father that undermine the genetic test; he could claim that a brother with similar genetic markings is the true father; or that he was merely an anonymous sperm donor; or that his parental rights had been terminated years earlier in another jurisdiction. Thus, even with advances in genetic testing it remains the case that the putative father's availability represents "a substantial factor contributing to the reliability of the fact-finding process." *Lalli*, 439 U.S. at 271 (internal quotations omitted).

---

[3] See *In re Estate of Stowers*, 678 So. 2d 660, 662 (Miss. 1996) (statute authorizing genetic testing of child, mother, or alleged father empowered court to order exhumation of decedent's body to determine whether he was father of nonmarital child seeking to inherit under intestacy statute); *Batcheldor v. Boyd*, 423 S.E.2d 810, 814 (N.C. Ct. App. 1992) (upholding order permitting exhumation of putative father's body to determine nonmarital child's right to inherit).

[4] Compare *William M. v. Superior Court*, 275 Cal. Rptr. 103, 105 (Ct. App. 1990) (court construed statute authorizing genetic testing of mother, child and putative father as expressing "deliberate policy of limitation" precluding court order requiring testing of putative father's parents), with *Sudwischer v. Estate of Hoffpauir*, 589 So. 2d 474, 476 (La. 1991) (upholding order requiring genetic testing of marital child of deceased

putative father based on conclusion that nonmarital child's "interest in identifying her father must outweigh [marital child's] expectation of privacy"), and *In re Estate of Rogers*, 583 A.2d 782, 784 (N.J. Super. Ct. App. Div. 1990) (court has "inherent power" to order collateral relatives of decedent to submit to blood tests to determine paternity of nonmarital child).

¶ 15. Finally, by encouraging the identification of nonmarital children during the father's lifetime, the twenty-one year limit facilitates better informed estate planning (even in the absence of a will) and helps to avoid last-minute disputes and delays in estate administration — as this case aptly illustrates. This objective is to be distinguished from the principle of "presumed intent" — the idea that intestate laws incorporate the rules of succession that a person would presumably wish for his or her property. See *Trimble*, 430 U.S. at 775 n.16 (expressing "doubt" that state may constitutionally exclude nonmarital children from right to inherit based on theory of presumed intent); *MacCallum*, 165 Vt. at 458-59, 686 A.2d at 938 (rejecting presumed intent as basis for statutory exclusion of adopted children from right to inherit from collateral kin). Unlike *Trimble*, the statute at issue here does not effect a complete exclusion from inheritance rights based on an obsolete and discriminatory presumption that fathers prefer marital over nonmarital children. It seeks, instead, a reasonably timely identification of nonmarital children who, once identified, may inherit equally with marital children under the statute. By encouraging paternity adjudications during the putative father's lifetime, the twenty-one year limit furthers reasonable and just governmental objectives in a manner that does not unreasonably exclude persons outside its intended scope. Accordingly, we discern no basis to invalidate the statute under the Common Benefits Clause, or to disturb the judgment of the trial court.

*Affirmed.*