Filed 9/12/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SUSAN DENT,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>KENNETH S. WOLF, as<br>Special Administrator, etc.,<br><br>  Defendant and<br>Respondent. | B278951<br><br>(Los Angeles County<br>Super. Ct. No. BF052146) |

  APPEAL from a judgment of the Superior Court of Los Angeles County, Shelley Kaufman, Judge. Reversed.

  O'Melveny & Myers, Mark A. Samuels; and Bradley N. Garcia for Plaintiff and Appellant.

  Kenneth S. Wolf, in pro. per., for Defendant and Respondent.

          \* \* \* \* \* \*

After concluding that appellant Susan Dent lacked standing, the trial court dismissed her paternity lawsuit. The narrow issue on appeal is whether a child who seeks a declaration of paternity after her putative father is deceased presents a justiciable controversy when the child requests no financial remuneration. We conclude that Dent has standing to pursue her paternity lawsuit and reverse the dismissal.

## BACKGROUND

On December 23, 2014, then 69-year-old Susan Dent filed a petition to establish parental relationship under Family Code section 7630.[1] She named the executor of her putative father's estate as respondent, and by the parties' joint stipulation, the executor was later replaced by a special administrator (administrator). It is undisputed that Dent's putative father died testate in 1985, and final judgment on his estate was entered in 1993.

Administrator moved to dismiss Dent's paternity petition "on the ground that the Petition presents no justi[c]iable controversy as it seeks only an Order determining paternity with no request for any relief or payments of any kind." Administrator argued that Dent "does not stand to suffer any degree of injury in this matter, and only seeks to invoke the judicial process for apparently personal reasons. As a result, there is no actual controversy to be determined by this Court." In response, Dent acknowledged that she was "not seeking any support or other financial relief." Nor was "she seeking any distribution or other interest in the [putative father's] Estate." Instead she sought a declaration of paternity for reasons other than financial ones.

---

[1] Undesignated statutory citations are to the Family Code unless otherwise specified.

2

The trial court dismissed Dent's petition.  The court explained:  "Here, Petitioner is not a young child whose social and emotional strength and stability are at issue.  The probate estate is closed precluding any financial interest in the deceased's estate.  Petitioner does not have a social relationship to maintain or create.  The object of the paternity laws to protect a child's well-being is not achieved by this suit.  As her stated father has long since died, he cannot accept or contest the claim of paternity."  This appeal followed.

## DISCUSSION

In 1975, California adopted portions of the 1973 Uniform Parentage Act.  (*Johnson v. Calvert* (1993) 5 Cal.4th 84, 88.)  "The legislation's purpose was to eliminate the legal distinction between legitimate and illegitimate children." (*Ibid.*)  Under the act, " '[t]he parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents.' [Citation.]  The 'parent and child relationship' is thus a legal relationship encompassing two kinds of parents, 'natural' and 'adoptive.' " (*Id.* at p. 89.)  " 'The [California] Uniform Parentage Act (UPA), Family Code section 7600 et seq., provides the statutory framework for judicial determinations of parentage, and governs private adoptions, paternity and custody disputes, and dependency proceedings.' " (*In re D.A.* (2012) 204 Cal.App.4th 811, 824.)

Section 7601, subdivision (b) explains:  " 'Parent and child relationship' . . . means the legal relationship existing between a child and the child's natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations."  " '[T]he establishment of the parent-child relationship is the most fundamental right a child possesses to be

equated in importance with personal liberty and the most basic of constitutional rights.' " (*County of Shasta v. Caruthers* (1995) 31 Cal.App.4th 1838, 1849.)

With that background, we now turn to the basis for the appeal—to determine whether Dent had standing to bring her paternity petition. " 'Standing' is a party's right to make a legal claim and is a threshold issue to be resolved before reaching the merits of an action." (*Said v. Jegan* (2007) 146 Cal.App.4th 1375, 1382 [applying standing requirements under § 7630].) In the context of a paternity action, section 7360 identifies those with standing to pursue such a claim.[2] (*Michael M. v. Giovanna F.* (1992) 5 Cal.App.4th 1272, 1278 [former Civ. Code, § 7006, the predecessor to Fam. Code, § 7360, governs standing to have paternity declared]; see *Lisa I. v. Superior Court* (2005) 133 Cal.App.4th 605, 612 ["Section 7630, part of the Uniform Parentage Act, lists those persons who have standing to file an action to determine paternity."]; see also *J.R. v. D.P.* (2012) 212 Cal.App.4th 374, 384 [applying § 7630 to determine standing].) Under section 7630, subdivision (c) "an action to determine the existence of the parent and child relationship may be brought by the child." Thus, California law expressly affords Dent—as a child—standing to bring a paternity suit. Section 7630 contains no conditional requirement that the child express a pecuniary interest as a condition of the paternity suit. Nor does it contain an age limitation.

Administrator largely ignores the express permission in section 7630 for a child to pursue a paternity petition. Instead administrator argues that Dent's paternity suit "presented no

---

[2] Code of Civil Procedure section 377.60 similarly identifies persons with standing to bring a wrongful death action.

actual controversy and was therefore not justiciable." (Underscoring omitted.) This argument lacks merit; Dent's lawsuit presented an actual controversy—i.e. whether a parent-child relationship existed.

The purpose of a paternity suit—to determine the relationship between a parent and child—is achieved by Dent's lawsuit. "[T]he establishment of the parent-child relationship is the most fundamental right a child possesses . . . ." (*Ernest P. v. Superior Court* (1980) 111 Cal.App.3d 234, 237; see *Ruddock v. Ohls* (1979) 91 Cal.App.3d 271, 277-278 ["In contrast to enforcement of a child's right of a present or past support obligation, the establishment of the parent-child relationship is the most fundamental right a child possesses to be equated in importance with personal liberty and the most basic of constitutional rights."].) Moreover, a paternity action "cannot properly be characterized as a 'claim for damages, money or other property.' " (*Ernest P.*, *supra*, at p. 237.) "[A] child's right to support, once paternity is established, may constitute such a claim." (*Ibid.*) These principles ineluctably lead to the conclusion that Dent has a personal stake in the outcome of the paternity action, i.e. the accurate identification of her father and other collateral benefits such as the ability to amend her birth certificate and to develop a relationship with family members. (See § 7639 [permitting modification of a birth certificate following a parentage action].) The interest in identifying her father is independent of a claim for financial remuneration, affords her standing, and demonstrates a justiciable controversy.

*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559 (*Wilson*)—upon which the administrator heavily relies—does not suggest a different result. *Wilson*

5

explains general principles of justiciable controversies as follows: Justiciability " 'involves the intertwined criteria of ripeness and standing. A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' [Citation] But 'ripeness is not a static state' [citation], and a case that presents a true controversy at its inception becomes moot ' "if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character" ' [citation]." (*Id*. at p. 1573.) In *Wilson*, the court held that the substantial completion of a project rendered moot a resolution approving the redevelopment project. (*Id*. at pp. 1575-1576.)

The principles explained in *Wilson* support the conclusion that Dent has standing to sue for paternity. Dent does not seek an advisory opinion of parentage but seeks an actual determination of her parent-child relationship—an issue upon which the court can grant her effective relief. Dent's injury arises from the absence of an established parent-child relationship, not from the absence of child support or other payments from her putative father or his estate.[3] The issue is not moot because it

---

[3] Administrator makes other arguments—such as whether he is a proper party and whether the estate has an interest in the litigation. Those arguments—which differ from standing—are based on unsupported assertions. We do not consider them because (1) the only ground for dismissal was standing, (2) administrator's factual assertions are not supported by the record, and (3) administrator fails to provide legal authority in support of his position. We note that Dent has not sued any alleged relatives of her putative father's such as in *William M. v. Superior Court* (1990) 225 Cal.App.3d 447, 453-454. Nor has she

6

was never adjudicated, and although her putative father's death forecloses his companionship, that is but one reason for a paternity suit. Moreover, *Wilson* does not address standing in the context of a statute expressly delineating persons who can bring a particular lawsuit, and as noted administrator ignores the express language of section 7630.

## DISPOSITION

The dismissal of Susan Dent's paternity lawsuit is reversed. Appellant is entitled to costs on appeal.

FLIER, J.

WE CONCUR:

RUBIN, Acting P. J.

GRIMES, J.

---

requested any of her putative father's family members undergo DNA testing as in *Estate of Sanders* (1992) 2 Cal.App.4th 462, 468-469. Further, administrator relied only on standing, not on a statute of limitations as in the Texas case denying a 57-year-old child the right to establish the identity of her deceased putative father. (*In re Sicko* (Tex.Ct.App. 1995) 900 S.W.2d 863, 867.)