Don KAY; Don Kay Enterprises, Inc. and William J. Erbacker d/b/a Tower Art Theatre, Plaintiffs,

v.

William J. WHITE, Individually and as Mayor of the City of Gretna; John L. Dulcich, Jr., Individually and as Alderman of the City of Gretna; Eugene Gehring, Individually and as Alderman of the City of Gretna; Louis A. LeBouef, Jr., Individually and as Alderman of the City of Gretna; Anthony Joseph Marchese, Individually and as Alderman of the City of Gretna; Gerard Schexnayder, Individually and as Alderman of the City of Gretna; Beauregard Miller, Individually and as Marshall of the City of Gretna; Danny Braun, Individually and as Police Officer of the City of Gretna; and Frank P. Marchese, Individually and as Tax Collector of the City of Gretna, Defendants.

Civ. A. No. 68–887.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 16, 1968.

Morey L. Sear, New Orleans, La., for plaintiffs.

Andrew H. Thalheim, Gretna, La., for defendants.

RUBIN, District Judge:

The plaintiffs leased a motion picture theater situated in the City of Gretna, Louisiana, and announced that they intended to re-open it to exhibit motion pictures, limiting attendance to persons over 18 years of age. One week later, and three days before the scheduled opening date, the Board of Aldermen of the City of Gretna, unanimously adopted the following motion:

> "On a joint motion by all members of the Board of Aldermen, it was resolved that no movie house be given a permit where only adult films are shown and minors denied admittance, this being discriminating and against public policy and good morals."

Thereafter, a copy of the motion was served upon the plaintiffs by a police officer of the City of Gretna, with a warning that, if the theater opened as scheduled, the plaintiffs and their employees would be arrested. The plaintiffs applied for an occupational license to open the theater, and were denied such a license. They then sought a temporary restraining order, preliminary injunction, and permanent injunction restraining enforcement of the ordinance as unconstitutional.[1]

The Gretna ordinance purports on its face to serve the cause of good morals. It proposes to accomplish this, however, not directly by prohibiting what is of bad moral character, but indirectly by forbidding a movie house to deny admission to minors. This could further the

---

1. The jurisdiction of this Court is invoked under 42 U.S.C. § 1983, on the basis that this is a civil action for the deprivation of rights under color of state law. The plaintiffs allege jurisdiction under 42 U.S.C. § 1985 and 28 U.S.C. § 1343 (1).

cause of good morals only if it succeeded in requiring the theater to act as a censor and exhibit nothing but films that its management considered suitable for children. Hence, the ordinance in effect requires the motion picture exhibitor either to limit his program to films suitable for the very young or to display to minors the type of film that he considers unsuitable for them.

■ That such an ordinance is a restriction on freedom of expression cannot be denied. It could hardly be contended that either Congress or the State of Louisiana could require a book publisher to choose between printing only books that he considered it proper for minors to read or selling unsuitable books to them. The question is whether such a restriction can constitutionally be imposed on the exhibitor of motion picture films.

No anthropologist will ever be able to identify the first censor, for the earliest form of restriction on freedom of expression—the taboo—must have been coeval with man's first social groups. No historian has yet found an early society in which freedom of expression was not limited in some way. The struggle to remove the gag of the censor is an integral part of man's fight for liberty.

The Americans who fought the dominion of a British king sought to protect their freedom against possible encroachment by the republic they established. In the First Amendment to the Constitution they prohibited their own Congress from making any law "abridging the freedom of speech, or of the press."

"Those who won our independence believed that the final end of the state was to make men free to develop their faculties * * *. They believed that freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth * * *. They recognized the risks to which all human institutions are subject. But they knew that order cannot be secured merely through fear of punishment

for its infraction; that it is hazardous to discourage thought, hope and imagination * * * and that the fitting remedy for evil counsels is good ones." Mr. Justice Brandeis, concurring in Whitney v. People of State of California, 1927, 274 U.S. 357, 375, 47 S.Ct. 641, 648, 71 L.Ed. 1095.

"[F]reedom of speech and of the press * * * are among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the States." Gitlow v. People of State of New York, 1925, 268 U.S. 652, 666, 45 S.Ct. 625, 630, 69 L.Ed. 1138. A statute that operates to suppress an offending newspaper or periodical is unconstitutional, for "it is the chief purpose of the guaranty [of the liberty of the press] to prevent previous restraints upon publication." Near v. State of Minnesota, ex rel. Olson, 1931, 283 U.S. 697, 713, 51 S.Ct. 625, 630, 75 L.Ed. 1357.

■ Motion pictures constitute a form of speech and hence they are protected by the constitutional guarantees that safeguard freedom of speech. Joseph Burstyn, Inc. v. Wilson, 1952, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098; Kingsley International Pictures Corp v. Regents of University of State of New York, 1959, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512; Interstate Circuit, Inc. v. City of Dallas, 1968, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (U.S. April 22, 1968).

■ The exhibition of motion pictures may not be forbidden because they portray "a relationship which is contrary to the moral standards, the religious precepts, and the legal code" of the State or its citizens. "This argument misconceives what it is that the Constitution protects. Its guarantee is not confined to the expression of ideas that are conventional or shared by a majority. It protects advocacy of the opinion that adultery may sometimes be proper, no less than advocacy of socialism or the single tax." Kingsley International Pictures Corp. v. Regents of the University of the State of New York, supra, 360 U.S. at 688–689, 79 S.Ct. at 1365.

"[T]he legitimate and indeed exigent interests of States and localities throughout the Nation in preventing the dissemination of material deemed harmful to children * * * does not justify a total suppression of such material, the effect of which would be to 'reduce the adult population * * * to reading only what is fit for children.'" Jacobellis v. State of Ohio, 1964, 378 U.S. 184, 195, 84 S.Ct. 1676, 1682, 12 L.Ed.2d 793.

■■ "Of course as the Court said in Joseph Burstyn, Inc. v. Wilson, 343 U.S., at 502, 72 S.Ct. at 781, '[i]t does not follow that the Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and all places.'" Interstate Circuit, Inc. v. City of Dallas, supra, 390 U.S. at 684, 88 S. Ct. at 1303. "[B]ecause of its strong and abiding interest in youth, a State may regulate the dissemination to juveniles of, and their access to, material objectionable as to them, but which a State clearly could not regulate as to adults." Interstate Circuit, Inc. v. Dallas, supra, 390 U.S. at 690, 88 S.Ct. at 1306. See also Ginsberg v. State of New York, 1968, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (U.S. April 22, 1968). Therefore, a statute or ordinance that expressly prohibited the showing to any audience whatever of any motion picture not suitable for children would be unconstitutional. The same result cannot be obtained indirectly by requiring motion picture exhibitors to admit all comers to any show, even though the exhibitor might deem it unsuitable for that audience. The adult moviegoer may not be restricted to the pabulum in *Mary Poppins*.

Congress and the States are prohibited from abridging freedom of speech because we have firmly adopted the belief that in the rivalry for the minds of men, all ideas must be free to compete, however baneful. And this in turn is founded on the predicate that truth will prevail in the intellectual market of ideas.

It is illusory to suppose that, by preventing adults from seeing whatever a theater owner deems unfit for a 9-year-old girl, the City of Gretna or any governmental body can remake public morality. John Milton spoke in *Areopagitica* to the censors of this day, as well as to those of 1644, when he likened their efforts to "the exploit of that gallant man who thought to pound up the crows by shutting his park gate." Indeed, as he there said, "Truth and understanding are not such wares as to be monopolized and traded in by tickets and statutes and standards."

■ "The well-being of its children is of course a subject within the State's constitutional power to regulate * * *." Ginsberg v. New York, supra, 390 U.S. at 639, 88 S.Ct. at 1281. The State has an interest in protecting the welfare of children and in seeing that they are safeguarded from harm. But in exercising that power of the State, the City of Gretna may not reach beyond the child and build a wall around the ideas that an adult may legally consider.

■ Finally, the ordinance is infected with the "vice of vagueness." Interstate Circuit, Inc. v. Dallas, supra, 390 U.S. at 683, 88 S.Ct. 1303. See also the discussion in Ginsberg v. New York, supra. Could the requirements of Gretna's ordinance be satisfied if a theater showed a Disney cartoon each Sunday, and admitted everyone to attendance on that day, while restricting attendance to adults on other days? What if the theater admitted an unlimited audience only on Good Friday and Thanksgiving Day? Or must it admit everyone to every movie? The ordinance does not tell us. This then is another reason why the ordinance is unconstitutional.

For these reasons, the injunction sought by the plaintiffs will be issued.