590 So.2d 565 (1991)
In the Interest of the Minor Child, J.M.
No. 91-CA-1772.
Supreme Court of Louisiana.
December 2, 1991.
Pamela A. Moses-Laramore, Tracy S. Pickerell, Baton Rouge, for appellant.
Alan Fishbein, Fishbein & Downs, Author Joiner, Baton Rouge, for appellee.
William J. Guste, Jr., Atty. Gen., Thomas S. Halligan, Asst. Atty. Gen., Jesse Marks, Asst. Atty. Gen., for State of La.
CALOGERO, Chief Justice.
The defendant, Mr. Z., filed a Petition for Declaratory Judgment in the Family Court of East Baton Rouge Parish alleging that La.R.S. 9:396, which provides for court-ordered blood testing in cases in which paternity is relevant, is not constitutional. The family court agreed and held the statute unconstitutional, whereupon the plaintiff, Ms. B., suspensively appealed that decision to this Court. For the reasons expressed herein, we reverse the decision of the lower court and find that La.R.S. 9:396 is not unconstitutional as that statute is construed by this Court.
*566 On February 19, 1988, the plaintiff filed a paternity action against her former husband, Mr. M., to whom she was married but separated at the time of the child's conception, and against the defendant, Mr. Z., with whom she purportedly had an exclusive sexual relationship near the time of probable conception. Defendant denies that he had a sexual relationship with the plaintiff during the time when the child could have been conceived.[1] To facilitate a determination of the paternity of her minor child, Ms. B. requested that the court order both defendants to undergo blood testing.
On April 11, 1988, Mr. Z. filed a Rule for Protective Order, alleging that the compulsory blood test would violate his constitutional rights. The district court granted the protective order which prevented Mr. Z.'s being required to submit to the blood test. The court of appeal reversed because La.R.S. 9:396 had previously been found constitutional in Jones v. Thibodeaux, 445 So.2d 44 (La.App. 4th Cir.), writ denied, 448 So.2d 112, reconsideration denied, 450 So.2d 356 (La.1984). Mr. Z. thereupon filed his first writ applications with this Court. This Court denied those writs which complained of the court of appeal's reversal and pro-constitutionality ruling.[2]
Then, on May 17, 1989, Mr. Z. filed a Motion for Declaratory Judgment seeking to have La.R.S. 9:396 declared unconstitutional. That statute provides:
A. Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child, and alleged father to submit to the drawing of blood samples....
The family court found for the defendant and declared the statute unconstitutional. On appeal, the plaintiff, Ms. B., now asks this Court to reverse the decision of the lower court.
The defendant contends that the statute violates his right to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution and Article I, Section 5 of the 1974 Louisiana Constitution. He further contends that the statute violates his rights of due process and equal protection of the law under the Fourteenth Amendment of the United States Constitution and Article I, Sections 2 and 3 of the 1974 Louisiana Constitution. In contrast, the plaintiff, Ms. B., contends that the statute does not violate any provision of the United States or Louisiana Constitutions.[3]
Regarding the Fourth Amendment claim, defendant alleges that the statute unconstitutionally commands the court to issue a peremptory order for blood testing upon request of any of the parties to the paternity action, without a hearing and without any particularized factual justification. The defendant contends that a particularized showing is constitutionally required for a search and seizure under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and State v. Church, 538 So.2d 993 (La.1989). Plaintiff counters with the argument that the State has an important interest in establishing paternity and that blood testing to determine paternity is highly effective, low risk, minimally intrusive, and commonly performed. She therefore contends that the intrusion into the *567 defendant's privacy is warranted and constitutionally permissible.
In Schmerber v. State of California, 384 U.S. 757, 767, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908 (1966), the United States Supreme Court determined that court-ordered blood testing involves a search and seizure under the Fourth Amendment of the United States Constitution. The Court stated, however, that the Fourth Amendment acts "to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." Id. Schmerber involved a defendant who was arrested for driving under the influence of alcohol. Because of the state's interest in securing evidence of drunk driving, the routine nature, minimal intrusion and virtual absence of risk or pain involved in a blood test, the effectiveness of blood testing in determining whether a person is drunk, and the proper administration of the test by medical personnel within a hospital setting, the Court determined that a warrantless blood test to measure blood-alcohol level was reasonable under the circumstances. Id. at 771, 86 S.Ct. at 1836; Schmerber was a criminal case. The U.S. Supreme Court, however, has held that the Fourth Amendment prohibition applies to civil cases as well. National Treasury Employees Union v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1986); Marshall v. Barlows, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).
A court order for blood testing to determine paternity is therefore a search and seizure within the meaning of the Fourth Amendment. In the present case, the question at issue in the defendant's Fourth Amendment claim is whether a court-ordered blood test is reasonable and justified under the circumstances. In a number of other jurisdictions with similar blood testing statutes, courts have consistently held that blood testing to facilitate a determination of paternity is reasonable and constitutionally permissible. S.S. v. E.S., 243 N.J.Super. 1, 578 A.2d 381 (A.D.1990), aff'd, 124 N.J. 391, 590 A.2d 1188 (N.J.1991); McCarty v. Kimmel, 62 Ohio App.3d 775, 577 N.E.2d 665 (1989); Bowerman v. MacDonald, 431 Mich. 1, 427 N.W.2d 477 (1988); Albany County Dept. of Social Serv. v. Seeberger, 112 A.D.2d 674, 492 N.Y.S.2d 182 (1985); Rose v. Dist. Court of Eighth Judicial District, 192 Mont. 341, 628 P.2d 662 (1981); State v. Meacham, 93 Wash.2d 735, 612 P.2d 795 (1980).
A blood test is minimally intrusive, relatively painless, and medically safe. In facilitating a determination of paternity, blood tests are highly reliable and unequaled in evidentiary value. See e.g., Perry v. Commonwealth, ex rel., Kessinger, 652 S.W.2d 655, 660-61 (Ky.1983); State v. Meacham, 612 P.2d at 797. In Commonwealth v. Beausoleil, 397 Mass. 206, 490 N.E.2d 788 (1986), the court stated that "... [HLA testing] is now accepted as the single, most powerful blood testing system for excluding putative fathers." Id. 490 N.E.2d at 798, n. 20. The Massachusetts court went on to state that "... HLA testing is a reliable means of excluding paternity. On this point there is no dispute." Id.
Blood testing to determine paternity has also been endorsed by the American Medical Association and the Section on Family Law of the American Bar Association. See Joint AMA-ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage, 10 Family L.Q. 247 (1976). In addition, such testing has been endorsed by the U.S. Supreme Court:
... the modern status of [blood grouping tests in paternity cases] has been described by one commentator as follows:
"As far as accuracy, reliability, dependabilityeven infallibilityof the test are concerned, there is no longer any controversy. The result of the test is universally accepted by distinguished scientific and medical authority. There is, in fact, no living authority of repute, medical or legal, who may be cited adversely.... [T]here is now... practically universal and unanimous judicial willingness to give decisive and controlling evidentiary weight to a blood test exclusion of paternity." *568 S. Schatkin, Disputed Paternity Proceedings § 9.13 (1975).
Little v. Streater, 452 U.S. 1, 7, 101 S.Ct. 2202, 2206, 68 L.Ed.2d 627 (1980).
Although the alleged father has a right to privacy and to be free from unreasonable searches and seizures, those rights are not absolute and may be reasonably regulated when the State has a sufficiently weighty interest. Winston v. Lee, 470 U.S. 753, 760, 105 S.Ct. 1611, 1616, 84 L.Ed.2d 662 (1985); Roe v. Wade, 410 U.S. 113, 155, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1972); Plaquemines Parish Commission Council v. Delta Development Co., Inc., 472 So.2d 560, 567-68 (La.1985). In this case, the State has a compelling interest because of its pervasive concern for the welfare of its children. La.R.S. 46:236.1; See Little v. Streater, 452 U.S. at 14, 101 S.Ct. at 2209; Ginsberg v. New York, 390 U.S. 629, 639-41, 88 S.Ct. 1274, 1280-82, 20 L.Ed.2d 195 (1968); Prince v. Massachusetts, 321 U.S. 158, 165, 64 S.Ct. 438, 441, 88 L.Ed. 645; (1944); Kay v. White, 286 F.Supp. 684, 687 (E.D.La.1968); Jane L. v. Rodney B., 108 Misc.2d 709, 438 N.Y.S.2d 726, 728 (Fam. Ct.1981). In addition, in a paternity case involving a minor child on public assistance, the State has an important interest in conservation of the State's public assistance funds. Jane L., 438 N.Y.S.2d at 729; Salas v. Cortez, 24 Cal.3d 22, 154 Cal.Rptr. 529, 536, 593 P.2d 226, 233, cert. denied, 444 U.S. 900, 100 S.Ct. 209, 62 L.Ed.2d 136 (1979). Finally, a minor child has a right to support from his parents. La.C.C. art. 227; See Little v. Streater, 452 U.S. at 13, 101 S.Ct. at 2209.
In a criminal case, where indisputably there are compelling state interests in crime detection, probable cause must nonetheless be present for a search and seizure to be constitutional in Louisiana. La. Const. art. I, § 5; State v. Church, 538 So.2d 993 (La.1989). Although a paternity action is civil, not criminal, the constitutional prohibition against unreasonable searches and seizures is still applicable, and a proper showing of sufficient justification under the particular factual circumstances of the case must be made before a court may order a compulsory blood test. Courts in various jurisdictions have differed regarding the kind of procedures which are required, but those jurisdictions have almost universally found that a preliminary showing must be made before a court can constitutionally order compulsory blood testing in paternity cases.[4] We agree, and find that, as a preliminary matter, before the court may issue an order for compulsory blood testing, the moving party must show that there is a reasonable possibility of paternity. As explained hereafter, in cases in which paternity is contested and a party to the action refuses to voluntarily undergo a blood test, a show cause hearing must be held in which the court can determine whether there is sufficient evidence to establish a prima facie case which warrants issuance of a court order for blood testing.
With regard to a hearing, the defendant alleges that, because La.R.S. 9:396 makes no provision for a show cause hearing, the statute denies the alleged father his right to due process and an opportunity to be heard as required by the Due Process *569 Clause of the Fourteenth Amendment and Article I, Section 2 of the 1974 Louisiana Constitution. Although the plaintiff did request a show cause hearing in her petition to the family court, she contends in her writ to this Court that sufficient procedural protections are provided in the statute and that no hearing is necessary. The attorney general, in his amicus curiae brief, suggests that this Court should provide for a hearing in appropriate cases in order to preserve the constitutionality of the statute.
It is clear that an individual's constitutional right to due process is implicated when compulsory blood testing is ordered by a court. The United States Supreme Court has considered the extraction of blood to be a deprivation which is subject to the constraints of the Due Process Clause of the Fourteenth Amendment. See Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957). In addition, the U.S. Supreme Court has stated that "[j]ust as the termination of such [familial] bonds demands procedural fairness..., so too does their imposition." Little v. Streater, 452 U.S. at 13, 101 S.Ct. at 2209. Sufficient procedural protections to afford due process must therefore be provided before issuance of a court order for blood testing.
Because we decide in this opinion that procedural protections must be provided before a court orders compulsory blood testing, it is necessary to consider what procedural safeguards are required. In Morrissey v. Brewer, 408 U.S. 471, 480-81, 92 S.Ct. 2593, 2599-2600, 33 L.Ed.2d 484 (1972), the U.S. Supreme Court stated that due process is a flexible concept and that the procedural safeguards which are demanded to ensure fundamental fairness are determined by the particular situation. The Supreme Court, in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), set forth the factors to be considered in determining whether a proposed procedural safeguard is required by due process: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335, 96 S.Ct. at 903.
To determine the procedures which are constitutionally required to protect the defendant's rights, it is necessary to apply the balancing test set forth in Mathews. The first Mathews factor concerns the private interests which will be affected if the court orders a blood test. The defendant's rights of privacy and liberty are infringed upon when the court orders such a test. In addition, "[a]part from the putative father's pecuniary interest in avoiding a substantial support obligation and liberty interest threatened by the possible sanctions for noncompliance, at issue is the creation of a parent-child relationship." Little v. Streater, 452 U.S. at 13, 101 S.Ct. at 2209. We therefore recognize that an alleged father, such as the defendant, has significant constitutional interests at stake in court-ordered blood testing for paternity.
The second Mathews factor involves the risk of erroneous deprivation of the defendant's constitutional interests. That risk is substantial if the court issues a peremptory order for a blood test. Requiring the moving party to establish a prima facie case before issuance of such an order will reduce the risk of such erroneous deprivation of the defendant's rights.
The third factor set forth in Mathews involves the governmental interests which are implicated. In paternity actions involving support of a minor child, the State's interest in an accurate determination of paternity is compelling. The State also has an interest in making this determination as efficiently and inexpensively as possible. Nordgren v. Mitchell, 716 F.2d 1335, 1338 (10th Cir.1983). However, the financial cost to the State in providing the requisite procedural protections is an insufficient reason to deny those protections to an individual when such important constitutional *570 interests are involved. In Nordgren, despite the cost of providing counsel for indigents in paternity proceedings, the court stated that "... though the state's pecuniary interest is legitimate, it is hardly significant enough to overcome private interests as important as those here...." Id. at 1338-39, quoting Lassiter v. Dept. of Social Services, 452 U.S. 18, 28, 101 S.Ct. 2153, 2160, 68 L.Ed.2d 640 (1981). The Nordgren court further determined that the State's "interest in monetary savings cannot outweigh the strong private interests of the putative father, the shared interests of the parties, and the substantial procedural fairness achieved [by providing court-appointed counsel to the indigent putative father]." Id. at 1339.
In the present case, the fiscal and administrative burdens which would result from the implementation of appropriate procedural protections are not overly burdensome to the State. Indeed, the attorney general, in his amicus curiae brief, suggests that this Court should construe the statute to require a hearing. Our analysis of the factors set forth in Mathews weighs heavily in favor of providing such a hearing to ensure protection of the defendant's right to due process. We therefore require a showing, on a rule to show cause, at which the parties have an opportunity to present evidence regarding the mother's relationship with the alleged father, with rights of cross-examination and confrontation of witnesses, and in which counsel may present oral argument to the court.
The defendant contends that La.R.S. 9:396 mandates blood testing upon motion of any of the parties, and that the statute does so in contemplation, indeed while demanding, that there be no implementation of the constitutionally necessary procedural protections. We do not find the statute so limiting. The absence of express procedural protective provisions in La.R.S. 9:396 is no command that such procedures are impermissible, nor is it indicative that the Legislature intended for such procedures not to be employed or that the statute must be enforced in isolation from other provisions of Louisiana law. Statutes are presumed to be constitutional and it is the duty of this Court to uphold the constitutionality of statutes whenever it can reasonably do so. State v. Griffin, 495 So.2d 1306 (La.1986); Buras v. Board of Trustees of Police Pension of the City of New Orleans, 367 So.2d 849 (La.1979). In addition,
[w]here a statute confers powers or duties in general terms, all powers and duties incidental and necessary to make such legislation effective are included by implication. Thus it has been stated, `An express statutory grant of power or the imposition of a definite duty carries with it by implication, authority to employ all the means that are usually employed. That which is clearly implied is as much a part of a law as that which is expressed.' [quoting State v. Nestos, 48 N.D. 894, 187 N.W. 233, 235 (1922)]"
N. Singer, Sutherland Stat. Const. § 55.04 (Sands 4th Ed.1984).
According to this Court's decision in Bayou Cane Fire Dept. v. Terrebone Parish, 548 So.2d 915, 919 (La.1989), [t]he fact that a statute is poorly drafted or incomplete does not render it unconstitutional." In fact, it has been stated that
... it is a general principle that the courts should, if reasonably possible to do so[,] interpret the statute, or the provision being construed, so as to give it efficient operation and effect as a whole. An interpretation should, if possible, be avoided, under which the statute or provision being construed is defeated.... Moreover, notwithstanding the general rule against the enlargement or extension of a statute by construction, the meaning of a statute may be extended beyond the precise words used in the law, and words or phrases may be altered or supplied, where this is necessary to prevent a law from becoming a nullity. Wherever the provision of a statute is general, everything which is necessary to make such provision effectual is supplied by implication.
73 Am.Jur.2d Statutes § 249 (1974). Absent clear and convincing evidence that it was the `constitutional aim to deny the legislature the power to enact the statute,' *571 the constitutionality of the act must be upheld." Bayou Cane at 919, quoting Board of Directors of Louisiana Recovery District v. All Taxpayers, Property Owners and Citizens of the State of Louisiana, 529 So.2d 384, 388 (La.1988). So commanded, we must determine whether the statute can be reasonably construed so as to save its constitutionality.
When the Legislature enacted La.R.S. 9:396, it was well aware of the existence of ancillary provisions in the Louisiana Code of Civil Procedure which permit this Court to require a show cause hearing. La. C.C.P. arts. 2591-2596 provide for summary proceedings including rules to show cause. La.C.C.P. art. 963 provides for a contradictory hearing when a party moves for a court order to which the moving party is not clearly entitled or which requires supporting proof. According to La.C.C.P. art. 963, a rule to show cause is a contradictory motion. La.C.C.P. art. 1421 provides for general discovery by means of physical examinations. Construing those procedural provisions in pari materia with La.R.S. 9:396, we interpret La.R.S. 9:396 so as to render it constitutional by reading into the statute a requirement for a show cause hearing. In the show cause hearing, before the statute is triggered and a court order for blood testing issued, the moving party must first show that there is a reasonable possibility of paternity.
We have been aided in coming to this conclusion by the decisions of a number of courts in other jurisdictions. Faced with constitutional challenges to similar statutes in their jurisdictions, those courts also adopted requirements for appropriate procedural protections in order to save the constitutionality of their blood testing statutes.[5]
Finally, the defendant alleges that the statute discriminates unconstitutionally on the basis of gender in violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution and Article 1, Section 3 of the 1974 Louisiana Constitution, because it provides for court-ordered blood testing to establish paternity, but not maternity. The plaintiff contends that the statute does not violate the Equal Protection Clause, pointing first to the fact that both the mother and the alleged father are tested under the statute. More persuasively, the plaintiff argues that the statute's gender distinction in providing for blood testing for paternity, but not maternity, is reasonable and not an equal protection violation, because of the difficulty in determining paternity and the contrasting ease with which maternity can usually be determined.
Statutes which distinguish on the basis of gender are afforded intermediate level scrutiny. A statute which classifies on the basis of gender is constitutional if it serves "important governmental objectives" and is "substantially related to achievement of those objectives." Califano v. Webster, 430 U.S. 313, 314, 97 S.Ct. 1192, 1193, 51 L.Ed.2d 360 (1977); Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976). In this case, the governmental interest in establishment of paternity is protection of the welfare of the minor child and conservation of the State's public assistance funds. The State has as great an interest in establishing maternity as paternity. However, because paternity is usually significantly more difficult to prove, we are not prepared to say that the statute is unconstitutional because it addresses blood testing for paternity alone.[6] While implicating *572 equal protection concerns, the gender distinction is largely de minimis and is not sufficiently important to prompt us to strike the statute on that account. The statute does not violate the Equal Protection Clauses of the United States or Louisiana Constitutions and is not constitutionally impermissible because of its gender distinction.
The burden of proof rests with the party who is challenging a statute's constitutionality to prove clearly that the statute is in conflict with a specific provision of the Constitution. Moore v. Roemer, 567 So.2d 75, 78 (La.1990); Board of Directors of the Louisiana Recovery District v. All Taxpayers, Property Owners, and Citizens of Louisiana, 529 So.2d 384, 387 (La.1988); Board of Commissioners v. Dept. of Natural Resources, 496 So.2d 281, 286 (La. 1986); State v. Griffin, 495 So.2d 1306, 1308 (La.1986). The defendant has not met that burden.
Because of the strong societal interest in the determination of parentage of minor children and the minimal intrusion involved, we find that court-ordered blood testing in paternity cases is constitutionally permissible if justified under the circumstances of the particular case. La.R.S. 9:396 is reasonably construed by this Court to require a proper showing in a show cause hearing before issuance of an order for compulsory blood testing. The statute is therefore not unconstitutional, because, so construed, it does not violate the prohibition against unreasonable searches and seizures under the Fourth Amendment of the United States Constitution or Article I, Section 5 of the 1974 Louisiana Constitution, nor does it violate an individual's due process and equal protection rights under the Fourteenth Amendment of the United States Constitution or Article I, Sections 2 and 3 of the 1974 Louisiana Constitution.

DECREE
For the foregoing reasons, the judgment of the family court declaring La.R.S. 9:396 unconstitutional is reversed and this case is remanded to the family court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Defendant concedes that he had a sexual relationship with plaintiff but alleges that the relationship ended approximately twenty-one months before the birth of the child.
[2] Justice Lemmon voted in favor of the writ denials, but correctly noted that "Jones v. Thibodeaux, 445 So.2d 44 (La.App. 4th Cir.1984), which was relied on by the Court of Appeal in this case, presented a different attack on the constitutionality of the statutory scheme." In Jones v. Thibodeaux, supra, at 47, the court of appeal had found simply that La.R.S. 9:396 is not unconstitutionally vague.
[3] The attorney general filed a brief in support of the constitutional validity of La.R.S. 9:396. He contends that the statute is not unconstitutional when read in pari materia with other statutes to provide in appropriate cases for a showing of cause or a hearing before issuance of a court order for blood testing.
[4] S.S. v. E.S., 243 N.J.Super. 1, 578 A.2d 381 (A.D.1990), aff'd, 124 N.J. 391, 590 A.2d 1188 (1991) (burden on plaintiff to show reasonable quantum of individualized suspicion; documentary submissions may be sufficient); Schenectady County Dept. v. Robert J., 126 A.D.2d 786, 510 N.Y.S.2d 289, appeal dismissed, 69 N.Y.2d 1038, 517 N.Y.S.2d 1031, 511 N.E.2d 90 (1987) (affidavit from mother sufficient to establish prima facie showing of sexual relations with alleged father); Koleski v. Park, 363 Pa.Super. 22, 525 A.2d 405 (1987) (requiring hearing to determine accuracy of first set of blood tests and to decide whether to order further testing); Commonwealth v. Beausoleil, 397 Mass. 206, 490 N.E.2d 788 (1986) (probable cause required); State ex rel. McGuire v. Howe, 44 Wash.App. 559, 723 P.2d 452 (1986) (construing Meacham's hearing requirement, found that hearing with submission of affidavits and arguments of counsel, which established reasonable possibility or prima facie case of requisite sexual intercourse, sufficient to order blood testing); Rose v. Dist. Court of Eighth Judicial District, 192 Mont. 341, 628 P.2d 662 (1981) (informal pretrial hearing held to determine if prima facie case established through affirmative showing of probable cause); State v. Meacham, 93 Wash.2d 735, 612 P.2d 795 (1980) (if alleged father denies sexual relationship with mother near the time of probable conception, court must hold hearing and be satisfied, at least prima facie, of sexual intercourse during the appropriate time period).
[5] S.S. v. E.S., 243 N.J.Super. 1, 578 A.2d 381 (A.D.1990) (court adopted requirement for preliminary showing although statute did not expressly require such a finding); State ex rel. McGuire v. Howe, 44 Wash.App. 559, 723 P.2d 452 (1986) (paternity statute amended legislatively to require "reasonable possibility" standard; court determined that hearing with submission of affidavits and arguments of counsel satisfied due process); Rose v. Dist. Court of Eighth Judicial District, 192 Mont. 341, 628 P.2d 662 (1981) (court read into statute a requirement for an informal hearing); State v. Meacham, 93 Wash.2d 735, 612 P.2d 795 (1980) (no express provision in statute, but court stated that a hearing was required when a party denies having a sexual relationship at the probable time of conception).
[6] Our research of other jurisdictions uncovered no cases in which paternity blood testing statutes were declared unconstitutional because of similar gender distinctions. In fact, although constitutional challenges have been brought in other jurisdictions on Fourth Amendment search and seizure and Fourteenth Amendment due process grounds, we have found no cases in which similar statutes were even challenged on equal protection grounds.