**EARL T. LINDSAY, JR., ET AL.**     \*        **NO. 2021-C-0236**

**VERSUS**                        \*

                              **COURT OF APPEAL**

**PORTS AMERICA**         \*

**GULFPORT, INC., ET AL.**        **FOURTH CIRCUIT**

                           \*

                            **STATE OF LOUISIANA**

**\* \* \* \* \* \* \***

CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-01610, DIVISION "C"
Honorable Sidney H. Cates, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*

(Court composed of Judge Paula A. Brown, Judge Tiffany G. Chase, Judge Dale N. Atkins)

David Cannella
Christopher C. Colley
Benjamin D. Rumph
Kristopher Thompson
BARON & BUDD, PC
2600 CitiPlace, Suite 400
Baton Rouge, LA 70808

      COUNSEL FOR PLAINTIFFS/RELATORS

James M. Williams
Inemesit O'Boyle
Erin B. Rigsby
CHEHARDY, SHERMAN, WILLIAMS,
MURRAY, RECILE, STAKELUM & HAYES, LLP
One Galleria Boulevard, Suite 1100
Metairie, LA 70001

Jason F. Giles
Anthony Joseph Milazzo, III
Justin A. Reese
Brian Lee King
THE KING FIRM, LLC
2912 Canal Street
New Orleans, LA 70119

Randall Edward Treadaway
TREADAWAY BOLLINGER, LLC

406 North Florida Street, Suite 2
Covington, LA 70043

Richard P. Sulzer
SULZER & WILLIAMS, LLC
201 Holiday Boulevard, Suite 335
Covington, LA 70433

Gus David Oppermann, V
WHEAT OPPERMANN, PLLC
848 Heights Boulevard
Houston, TX 77007

John Kearney Nieset
CHRISTOVICH & KEARNEY, LLP
601 Poydras Street, Suite 2300
New Orleans, LA 70130

Jacque Pierre DeGruy
PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC
1100 Poydras Street, Suite 2250
New Orleans, LA 70163

Kevin J. LaVie
Meredith Blanque
PHELPS DUNBAR, LLP
365 Canal Street, Canal Place, Suite 2000
New Orleans, LA 70130

Alan Guy Brackett
MOULEDOUX BLAND LEGRAND & BRACKETT, L.L.C.
701 Poydras Street, Suite 4250
New Orleans, LA 70139

Desiree W. Adams
TAYLOR, WELLONS, POLITZ & DUHE, APLC
1515 Poydras Street, Suite 1900
New Orleans, LA 70112

Anthony M. Williams
ENTERGY SERVICES, LLC
639 Loyola Avenue, 26th Floor
New Orleans, LA 70113

COUNSEL FOR DEFENDANTS/RESPONDENTS

**WRIT GRANTED; JUDGMENT VACATED
AND REMANDED; STAY LIFTED
JUNE 15, 2021**

This case involves the wrongful death and survival actions of the heirs of Earl T. Lindsay, Sr.  Plaintiffs/Relators, Earl T. Lindsay, Jr. and Jocelyn Lindsay Butler, seek review of the district court's March 18, 2021, judgment, which granted Intervenors'/Respondents', Reginald Rivers and Mosi Makori, re-urged motion to compel DNA testing, pursuant to La. R.S. 9:396.  For the reasons that follow, we grant Plaintiffs' writ application, vacate the district court's judgment, and remand this matter for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

In February 2015, Earl T. Lindsay, Sr. ("Decedent") was diagnosed with asbestos-related lung cancer.  Shortly after his diagnosis, on February 18, 2015, he succumbed to the disease.  On June 23, 2015, Earl T. Lindsay, Jr. and Jocelyn Lindsay Butler (collectively "Plaintiffs"), Decedent's natural children, were placed in possession of Decedent's pending mesothelioma claim.  On February 17, 2016, Plaintiffs filed an original petition for damages and claims for wrongful death and survival actions against Decedent's former employers and their insurers.

1

*Petition for Intervention*

On May 1, 2017, Reginald Rivers and Mosi Makori, on behalf of his father Lyndon Rivers, (collectively "Intervenors"), filed a petition to intervene in the original petition for damages filed by Plaintiffs. Intervenors alleged that Decedent was the biological father of Reginald and Lyndon Rivers. In December 2017, Intervenors filed their first amending and/or supplemental petition for intervention and to establish paternity. In this pleading, Intervenors alleged that Decedent acknowledged Intervenors as his biological children and held himself out as Intervenors' biological father during his lifetime.

*Exception of Prescription*

In response to Intervenors' petition to intervene, Plaintiffs and Defendants, SSA Gulf, Inc., Ports America Gulfport, Inc., Hartford Accident and Indemnity Company, Crowley Marine Services, Inc., and James J. Flanagan Shipping Corporation, filed peremptory exceptions of prescription, which were scheduled for hearing on November 9, 2018. On November 29, 2018, the district court sustained Plaintiffs and Defendants' exceptions of prescription, and Intervenors appealed.

This Court, on December 4, 2019, vacated the district court's judgment and remanded the case to the district court with the following instructions:

> We find the trial court erred in dismissing with prejudice the petition to intervene. Applying the law and facts at hand, we find remand to the trial court appropriate for a hearing to allow Intervenors an opportunity to establish decedent's paternity, which has not been addressed. After a hearing, the trial court is instructed to determine whether Intervenors meet the requirements of La. C.C. art. 2315.2.

*Lindsay v. Ports Am. Gulfport, Inc.*, 19-0360, pp. 11-12 (La. App. 4 Cir. 12/4/19), 286 So.3d 534, 541, *writs denied*, 20-0038 (La. 3/9/20), 294 So.3d 479, and 20-0017 (La. 3/9/20), 307 So.3d 1028.

*Motion to Compel*

On September 20, 2018, before the district court heard the exceptions of prescription, Intervenors filed a motion to compel DNA testing of Plaintiffs and Intervenors. Intervenors attached, as exhibits to their motion to compel, affidavits from five individuals, purporting to have a relationship with Decedent. The affiants attested that Decedent publicly acknowledged Intervenors and held himself out to be their father. Plaintiffs filed an opposition memorandum and attached, as exhibits, their own deposition testimony, wherein they testified Decedent denied having any children, other than his three natural children[1]. There was no ruling on this motion by the district court.

*Re-urged Motion to Compel*

On December 1, 2020, after this Court remanded the matter to the district court, Intervenors re-urged their motion to compel DNA testing of Plaintiffs and Intervenors, which came for hearing on March 11, 2021.[2] At the conclusion of the hearing, the district court granted the motion. A judgment was issued on March 18, 2021, wherein the district court granted the re-urged motion to compel DNA

[1] The decedent's third natural child died prior to the pending litigation.

[2] While the affidavits were attached to Intervenors' original motion to compel and appear in the record, they were not attached to the re-urged motion, nor were they offered, filed and introduced into the record. In addition, Plaintiffs did not file an opposition to the re-urged motion to compel; rather, during the hearing on the re-urged motion to compel, Plaintiffs orally adopted their original opposition wherein they attached their deposition testimony. This Court has "recognize[d] the well-established principle that evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record." *See Bottle Poetry, LLC v. Doyle Rest. Group Franchise Co., LLC*, 13-0406, p. 7 (La. App. 4 Cir. 1/15/14), 133 So.3d 60, 66 (quoting *Denoux v. Vessel Mgmt. Servs., Inc.*, 07-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88).

3

testing and ordered the Plaintiffs and Intervenors to submit to DNA testing within thirty (30) days of the signing of the judgment. Plaintiffs filed a notice of intent to apply for supervisory writs and requested a stay of the proceedings, which the district court granted. This timely filed writ application followed.

**DISCUSSION**

Plaintiffs assign three errors for review: (1) Louisiana Revised Statute 9:396 does not apply to compel the DNA testing of alleged siblings; (2) the district court violated Plaintiffs' equal protection and due process rights in ordering DNA testing; and (3) Intervenors failed to prove a reasonable possibility of paternity by clear and convincing evidence.

*Standard of Review*

"A party seeking to compel discovery bears the burden of proving that the matters sought to be discovered are relevant. In determining whether to compel discovery, the trial judge has vast discretion." *Fat Catz Music Club, Inc. v. Fountain Servs. of La., Inc.*, 20-0586, 2021 WL 1571560, at *4 (La. App. 4 Cir. 4/21/21)(quoting *State ex rel. Ieyoub v. Racetrac Petroleum, Inc.*, 01-0458, p. 18 (La. App. 3 Cir. 6/20/01), 790 So.2d 673, 685). In addition, "absent a clear showing of abuse, a trial court's broad discretion in regulating pre-trial discovery will not be disturbed on appeal." *Id*. (citation omitted). Notwithstanding, "questions of law, such as the proper interpretation of a statute, are reviewed by appellate courts under the *de novo* standard of review, and the appellate court is not required to give deference to the lower court in interpreting a statute." *Jarquin v. Pontchartrain Partners, L.L.C.*, 19-0737, p. 7 (La. App. 4 Cir. 1/22/20) 289 So.3d 1129, 1134 (citing *Carver v. La. Dep't of Pub. Safety*, 17-1340, p. 4 (La. 1/30/18),

4

239 So.3d 226, 230). As this case involves mixed questions of fact and questions of law, we employ both abuse of discretion and *de novo* standards of review.

*Court Ordered DNA Testing under La. R.S. 9:396*

First, Plaintiffs contend the district court erred in ordering Plaintiffs to submit to DNA testing because La. R.S. 9:396 does not apply to compel the DNA testing of alleged siblings. Intervenors, on the other hand, argue the proof of Decedent's paternity to Reginald and Lyndon Rivers is a relevant fact to this litigation, and the district court acted within its discretion under La. R.S. 9:396 to order DNA testing of Plaintiffs.

Louisiana Revised Statute 9:396 provides in pertinent part:

A. (1) Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court may, on its own initiative, or shall, under either of the following circumstances, order the mother, child, and alleged father, or the mother's husband or former husband in an action en desaveu, to submit to the collection of blood or tissue samples, or both, and direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures:

(a) Upon request made by or on behalf of any person whose blood or tissue is involved, provided that such request is supported by a sworn affidavit alleging specific facts which either tend to prove or deny paternity.

(b) Upon motion of any party to the action made at a time so as not to delay the proceedings unduly.

(2) If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.

The Louisiana Supreme Court, in *Sudwischer v. Estate of Hoffpauir*, 589 So.2d 474 (La. 1991), on rehearing, examined the issue of whether La. R.S. 9:396 permitted a biological child to be compelled to provide DNA testing to aid in proving paternity and filiation of an illegitimate child. In *Sudwischer*, the plaintiff,

an alleged natural child, filed an action to establish filiation and prove paternity of her alleged deceased natural father. The plaintiff's father died intestate, leaving a surviving spouse, an adopted son, and a legitimate daughter. In an effort to establish filiation to the decedent, the plaintiff filed a motion to compel the decedent's legitimate daughter to submit to a blood test. The trial court denied the plaintiff's motion on the ground that La. R.S. 9:396 did not mandate the blood testing of siblings. *Id*. The appellate court denied writs, and the Supreme Court reversed the lower courts' ruling.[3] In concluding that the statute was not prohibitory, the *Sudwischer* Court opined that "[t]here is no indication that the statutory language [in La. R.S. 9:396] expresses a deliberate policy of limitation." *Id*. at 475. The Supreme Court reasoned that the illegitimate child's emotional and financial interest in knowing her father outweighed the natural child's privacy interest, there were no religious or physical obstacles to prevent the natural child from providing DNA, and the DNA testing would produce relevant evidence to be used in evaluating the illegitimate child's claim. *Id*. at 476.

Thus, based on the foregoing, we conclude La. R.S. 9:396 does not automatically prohibit a sibling from being compelled to submit to DNA testing. This assignment of error lacks merit.

*Due Process/Reasonable Probability of Paternity*

Plaintiffs next argue that the compulsory DNA testing ordered by the district court violated their constitutionally protected due process rights, and Intervenors failed to prove a reasonable probability of paternity. We agree.

In *In Interest of J.M.*, 590 So.2d 565 (La. 1991), the Louisiana Supreme Court examined whether an individual's constitutional right to due process is

---

[3] *Sudwischer v. Estate of Hoffpauir*, 577 So.2d 1 (La. 1991).

6

implicated when compulsory blood testing is ordered. In *In Interest of J.M.*, the plaintiff filed a paternity action against her former spouse, with whom she was separated from at the time of the child's conception, and against the defendant. The plaintiff alleged that she and the defendant had an exclusive sexual relationship that was proximate in time with the child's conception. The plaintiff petitioned the court for both her former spouse and the defendant to complete blood testing. The defendant denied the plaintiff's allegations, and in response, the defendant filed a rule for protective order, arguing that the compulsory blood test would violate his constitutional rights. The trial court granted the defendant's protective order, but the appellate court reversed.

On review, the Louisiana Supreme Court quoted *Mathews v. Eldridge*, 424 U.S. 319 (1976), wherein the United States Supreme Court set forth the factors to be considered in determining whether a proposed procedural safeguard is required by due process, and wrote:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*In Interest of J.M.*, 590 So.2d at 569. The Supreme Court explained, "before the court may issue an order for compulsory blood testing, the moving party must show that there is a reasonable possibility of paternity." *Id.* at 568. Moreover, "in cases in which paternity is contested and a party to the action refuses to voluntarily undergo a blood test, a show cause hearing must be held in which the court can determine whether there is sufficient evidence to establish a *prima facie* case which warrants issuance of a court order for blood testing." *Id.* The Supreme

7

Court concluded that court-ordered blood testing for paternity "require[s] a showing, on a rule to show cause, at which the parties have an opportunity to present evidence regarding the mother's relationship with the alleged father, with rights of cross-examination and confrontation of witnesses, and in which counsel may present oral argument to the court." *Id*. at 570.

In the case *sub judice*, review of the record shows that during the re-urged motion to compel hearing, the parties presented only oral argument to the district court before compulsory DNA testing was ordered. The hearing, as explained in *In Interest of J.M.*, should have consisted of evidence presented in support of or in opposition to Intervenors' mother's alleged relationship with Decedent and Decedent's alleged acknowledgment of Intervenors, with the parties' ability to exercise their right to cross-examine and confront witnesses. We conclude the hearing conducted by the district court was insufficient: 1) to protect Plaintiffs' due process rights before issuing an order for compulsory DNA testing; and, 2) to determine whether Intervenors presented requisite evidence to establish the reasonable possibility of paternity.

This assignment of error has merit.

## CONCLUSION

For the foregoing reasons, we grant the writ application, vacate the district court's judgment and remand the matter for an evidentiary hearing consistent with this writ opinion.

**WRIT GRANTED; JUDGMENT VACATED
AND REMANDED; STAY LIFTED**

8