Filed 3/25/25  Pointe Assets v. Viracon CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| POINTE ASSETS, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> VIRACON, INC., <br><br> Defendant and Appellant. | B330587 <br><br> (Los Angeles County <br> Super. Ct. No. EC067583) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ralph C. Hofer, Judge.  Affirmed.

Fox Rothschild, Eric J. Nystrom, John J. Shaeffer, John C. Ekman, Natalie I. Uhlemann; Winthrop & Weinstine and Thomas H. Boyd, *pro hac vice*, for Defendant and Appellant.

Hennigh Law Corporation, Scott E. Hennigh, Mathew R. Troughton, and Garrett M. Mott for Plaintiff and Respondent.

———————————

Viracon, Inc., a subcontractor that supplied defective windows for a commercial office building, appeals from a judgment confirming an arbitration award in favor of Pointe Assets, LLC, the assignee of the legal claims relating to the faulty windows. Viracon contends that Pointe Assets sustained no injury or damages because other companies covered the cost of the repairs of the windows. From this, Viracon concludes Pointe Assets lacked standing, and Viracon contends the superior court therefore had no jurisdiction to confirm the arbitration award or do anything other than dismiss the case.

These arguments are off-base. The company that assigned its legal claims to Pointe Assets, Catalina Media Development, LLC (Catalina Media), owned the office building at the time Viracon supplied the defective windows. Catalina Media thus suffered an injury that gave it standing to bring claims against Viracon. Pointe Assets, as Catalina Media's assignee, "stands in the shoes" of Catalina Media, assuming its rights and remedies with respect to the defective windows. The fact that other entities funded the repairs of the windows does not erase the injury. Viracon may have had an argument in the arbitration that Catalina Media and Pointe Assets failed to establish *damages* because other companies paid to replace the windows, but that argument does not raise any standing or jurisdictional issues. Further, Viracon has not identified any grounds under Code of Civil Procedure section 1286.2[1] authorizing us to vacate the award. We therefore affirm.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Pointe Office Building*

In early 2006, Catalina Media contracted with Krismar Construction Co. (Krismar) to build a commercial office building, The Pointe, which Catalina Media would own.  The building's design incorporated a glass curtain wall system, which formed the building's entire exterior.  Krismar contracted with Benson Industries, Inc. (Benson) to supply and install the system, which was made up of double-paned, "insulating glass units" that acted as both wall and window.[2]  The subcontract expressly made Catalina Media a third-party beneficiary.  Benson contracted with Viracon to design and supply over 4,400 windows for the project.  The Pointe was completed in April 2009.

In April 2016, a tenant notified The Pointe's property manager about a dirty window.  Catalina Media discovered there was a film that could not be cleaned within the hermetically sealed space between the panes of glass.  Catalina Media reported the issue to Benson, which contacted Viracon.  After inspecting the windows, Viracon denied that the issue was covered by its warranty and offered to replace some, but not all, of the windows.  Catalina Media countered that every window was defective and requested Viracon replace them all, but Viracon refused.

---

[2]    For readability, we refer to the insulating glass units as windows.

3

B.	*Sale of the Membership Interest in Catalina Media and Catalina Media's Assignment of Claims for Defective Windows to Pointe Assets*

After the discovery of the defective windows, CMD Media Development Investment I, LLC (CMD Investment I), the sole member of Catalina Media, entered into a Membership Interests Purchase and Sale Agreement (Sale Agreement) to sell its membership interests in Catalina Media for $350 million.

The buyer wanted no involvement with the project of replacing the defective windows. The Sale Agreement provided that CMD Investment I along with another entity that "indirectly owned" Catalina Media, Catalina Media Partners, LLC (CMP), would be responsible for the costs associated with the window remediation.

Two sections of the Sale Agreement are relevant. The first is a "Window Replacement Holdback" provision that required CMD Investment I and CMP collectively to contribute $18 million to an escrow account to provide funding for repairs of the defective windows. CMD Investment I and CMP "acknowledge[d] and agree[d]" that the buyer "shall cause [Catalina Media] to replace/and or repair the windows on the Building." The three parties further "acknowledge[d] and agree[d] that the Window Remediation Holdback [was] intended to give Buyer assurance that sufficient funds [were] available to achieve the Window Remediation Completion, but that same shall not be a limitation on [CMD Investment I's] or CMP's obligation to absolutely and irrevocably, relieve Buyer . . . from any liability or obligation in connection with the replacement of the windows." The Sale Agreement conditioned the closing of the deal on CMD Investment I and CMP funding the escrow account.

4

A second section titled "Retained Claims" specified that Pointe Assets, as the "Warranty Assignee," "shall have all right, title and interest in and to, and is exclusively entitled at all times . . . to all actions, claims, [and] causes of action" with respect to The Pointe's defective windows.[3]  It further stated that any damages "shall be the exclusive property of" Pointe Assets.  The agreement provided CMD Investment I "shall cause [Catalina Media] to assign the [retained claims regarding the windows] to [Pointe Assets] pursuant to that certain Assignment of Retained Claims and Warranty Proceeds substantially in the form of Exhibit 'Q.' "  Exhibit Q to the Sale Agreement was the "Assignment and Assumption of Warranties, Claims and Related Proceeds," in which Catalina Media assigned to Pointe Assets all legal claims, remedies, and proceeds regarding The Pointe's defective windows.

The window replacement ultimately cost $13,682,840, which was paid out of the escrow account funded by CMD Investment I and CMP.

C.    *Pointe Assets' Lawsuit and the Arbitration Proceedings*

In November 2017 Pointe Assets filed suit against Viracon and Benson, among others, alleging breach of express and implied warranty, negligence, strict products liability, breach of third-party beneficiary contract, and concealment.  In December 2017 Benson moved to compel arbitration under the arbitration

---

[3]    The arbitration panel found Pointe Assets was the successor in interest to Catalina Media, which changed its name to Pointe Assets sometime around the time the Sale Agreement was executed.

5

provision in its subcontracting agreement with Krismar, which identified Catalina Media as a third-party beneficiary entitled to enforce the provisions of the agreement.[4] Viracon joined the motion to compel arbitration.

In June 2018 Pointe Assets dismissed Benson from the case, and the superior court denied the motion to compel arbitration as moot, without prejudice to Viracon filing a renewed motion. In July 2018, Viracon again moved to compel arbitration. Over Pointe Assets' objection, the court granted Viracon's motion.

The case initially proceeded to arbitration, but in May 2020 the arbitrator ruled that Pointe Assets' claims were not arbitrable. In December 2020 the superior court granted Viracon's motion to vacate that ruling and again ordered the case to arbitration. Pointe Assets produced the Sale Agreement to Viracon in August 2021.

The 14-day arbitration began in January 2022. The hearing, which took place before a three-arbitrator panel, involved 15 live witnesses and nearly 500 exhibits. After the parties submitted over 2,000 pages of post-hearing briefing, in December 2022, the arbitration panel issued a 118-page award in Pointe Assets' favor. The panel determined that Viracon breached the implied warranty of fitness for a particular purpose and fraudulently concealed known defects. The panel awarded compensatory damages based on "the cost to remove and replace the defective [windows] plus the directly related costs such as supervision and other administrative costs." The damages award totaled $20,018,729.63, including $4 million in punitive damages.

---

[4] "A contract, made expressly for the benefit of a third person, may be enforced by him." (Civ. Code, § 1559.)

D.    *The Confirmation of the Arbitration Award*

Pointe Assets petitioned the superior court to confirm the arbitration award.  In opposition, Viracon contended the Sale Agreement revealed that CMD Investment I and CMP, not Catalina Media, funded the window replacement.  Viracon contended that, as a result, Pointe Assets, as Catalina Media's assignee, suffered no injury and lacked standing, and therefore the court lacked subject matter jurisdiction.

In April 2023 the court confirmed the award.  Noting the limited grounds for vacating an arbitration award, the court concluded that Viracon's "argument that none of the damages awarded were incurred by or transferred by the assignor [Catalina Media] does not appear to be a matter upon which this court can find that the arbitration panel acted in excess of its authority, or otherwise engaged in conduct which would justify vacating the award."

The court determined the arbitration panel had found the injury had been incurred by "the assignor" Catalina Media and "assigned to the assignee" Pointe Assets.  The court noted the panel's observation that as part of the sale of The Pointe to the buyer, " 'ownership of any claims with respect to the allegedly defective [windows] was assigned to another new entity, Pointe Assets.' "  The court then stated, "There have been no facts which have developed since this finding which would somehow change the jurisdictional posture since that time or [Pointe Assets'] standing or justify this court in finding it now lacks jurisdiction."  The court further stated the assignment of claims to Pointe Assets "appears valid on its face, and the arbitration panel made findings in its Final Award, at least twice, that the Assignment

7

was valid, covered the claims at issue, and conferred standing on the assignee, the arbitration claimant, to pursue those claims." The court entered judgment in favor of Pointe Assets in April 2023, and Viracon timely appealed.

## DISCUSSION

A.    *Standard of Review*

"California law favors alternative dispute resolution as a viable means of resolving legal conflicts. 'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration.' " (*Richey v. AutoNation Inc.* (2015) 60 Cal.4th 909, 916.) " 'The scope of judicial review of arbitration awards is extremely narrow.' " (*E-Commerce Lighting, Inc. v. E-Commerce Trade LLC* (2022) 86 Cal.App.5th 58, 63.) The California Arbitration Act (§ 1280 et seq.) provides "only limited grounds for judicial review of an arbitration award"; under the statute, "courts are authorized to vacate an award if it was (1) procured by corruption, fraud, or undue means; (2) issued by corrupt arbitrators; (3) affected by prejudicial misconduct on the part of the arbitrators; or (4) in excess of the arbitrators' powers." (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1344, citing § 1286.2, subd. (a); see *Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1085 ["The exclusive grounds for vacating an arbitration award are provided in . . . section 1286.2."].) " '[A]rbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' [Citations.] A contrary holding would

8

permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 28.)

" ' " 'On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard. [Citations.] To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues.' " ' " (*Roussos v. Roussos* (2021) 60 Cal.App.5th 962, 973.) " 'There is a presumption favoring the validity of the award, and appellant bears the burden of establishing [its] claim of invalidity.' " (*Valencia v. Mendoza* (2024) 103 Cal.App.5th 427, 442.)

B.      *Failure to Prove Damages Does Not Equate to Lack of Standing*

Viracon attempts to make an end-run around the strict limits imposed on judicial review of an arbitration award by arguing the superior court lacked subject matter jurisdiction and thus was required to dismiss the case rather than confirm the arbitration award. It contends the superior court lacked subject matter jurisdiction because Pointe Assets, as Catalina Media's assignee, never suffered any harm or injury and therefore lacked standing to sue Viracon. Viracon relies on the maxim that "[l]ack of standing may be raised at any time in the proceeding,

9

including at trial or in an appeal."[5] (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000; accord, *Spotlight on Coastal Corruption v. Kinsey* (2020) 57 Cal.App.5th 874, 882 [" 'Standing goes to the existence of a cause of action [citation], and the lack of standing may be raised at any time in the proceedings.' "].)

Viracon asserts that the terms of the Sale Agreement "completely shielded" Catalina Media (and therefore shielded its assignee Pointe Assets) "from any threatened or actual injury-in-fact associated with the replacement" of the windows. Indeed, the arbitration panel found that neither Catalina Media nor Pointe Assets contributed the $18 million in the escrow account that was used to fund the window remediation, and neither entity had a right nor claim to any of the money in that account. Viracon correctly notes that two different entities — CMD Investment I and CMP — agreed to and did contribute those funds and paid for the repair costs with respect to the windows in their entirety. Viracon thus argues that at the time of the assignment to Pointe Assets, Catalina Media "had no liability or obligation to replace or fund the replacement of the [windows], and thus, [Catalina Media] had no injury-in-fact," which deprived it of standing. Viracon is incorrect.

" ' "Standing" is a party's right to make a legal claim and is a threshold issue to be resolved before reaching the merits of an

---

[5] Viracon asserts Pointe Assets improperly withheld the Sale Agreement for almost four years, impeding Viracon's ability to discover and timely raise the issue of Pointe Assets' standing that the Sale Agreement laid bare. However, Viracon received the Sale Agreement in August 2021, five months before the arbitration began in January 2022.

action." ' " (*Dent v. Wolf* (2017) 15 Cal.App.5th 230, 233-234.)  To have standing, a party must have "a real interest in the ultimate adjudication because he or she has either suffered or is about to suffer an injury."  (*Osborne v. Yasmeh* (2016) 1 Cal.App.5th 1118, 1125.)  " '[A] cause of action for damage to real property accrues when the defendant's act causes " 'immediate and permanent injury' " to the property or . . . when there is "[a]ctual and appreciable harm" to the property.' "  (*Stofer v. Shapell Industries, Inc.* (2015) 233 Cal.App.4th 176, 189.)  "[A] former owner who suffered damage to . . . property while he owned it is a real party in interest" with standing to sue for the injury. (*Jasmine Networks, Inc. v. Superior Court* (2009) 180 Cal.App.4th 980, 996; see *Vaughn v. Dame Construction Co.* (1990) 223 Cal.App.3d 144, 148 ["[s]ince it was the plaintiff's interest in the property which was injured by the defendant's defective construction, she is the owner of the cause of action entitled to maintain the present action," despite the fact that the plaintiff no longer owned the property].)

Viracon does not dispute that Catalina Media owned The Pointe when the defective windows were installed.  Thus, Catalina Media suffered an injury to its property.  That injury gave Catalina Media standing to sue—and Pointe Assets subsequently stood in its shoes and had standing to sue Viracon by virtue of the assignment of legal claims to Pointe Assets, the validity of which is unchallenged.

Viracon suggests that even though Catalina Media may at one time have had standing by virtue of the injury from the damaged windows, that ceased to be the case once CMD Investment I and CMP made Catalina Media whole by paying to replace the windows, eliminating any damages to Catalina

11

Media.  However, "this argument conflates the issue of standing with the issue of the remedies to which a party may be entitled. That a party may ultimately be unable to prove a right to damages . . . does not demonstrate that it lacks standing to argue for its entitlement to them." (*Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 788-789 [holding pharmacies had standing to assert Unfair Competition Law claims against drug manufacturer, and rejecting argument that "ultimately Pharmacies suffered no compensable loss because they were able to mitigate fully any injury by passing on the overcharges"].)  The *Clayworth* court relied on the United States Supreme Court decisions *Adams v. Mills* (1932) 286 U.S. 397 and *Southern Pacific Co. v. Darnell-Taenzer Lumber Co.* (1918) 245 U.S. 531 to emphasize that plaintiffs' claims, and their standing to sue, accrue when they suffer a loss, regardless of what happens afterwards. (*Clayworth*, at p. 769, quoting *Adams*, at p. 407 [" 'the claim for damages arose at the time the extra charge was paid,' notwithstanding any subsequent reimbursement"]; *Southern Pacific*, at p. 534 [" 'The plaintiffs suffered losses . . . when they [over]paid.  Their claim accrued at once in the theory of the law and it does not inquire into later events.' "].)

That other entities paid for the window replacement costs did not extinguish Catalina Media's standing that arose when Viracon supplied The Pointe with defective windows.  Whether the payment for the window remediation by other entities affected Pointe Assets' *damages* is not a standing issue.  Rather, as an issue relating to damages, it was well within the purview of the arbitration panel to decide — and far outside the " 'extremely narrow' " scope of our review of the arbitration award.  (*E-*

12

*Commerce Lighting, Inc. v. E-Commerce Trade LLC, supra,*
86 Cal.App.5th at p. 63.)

C. *Even if Pointe Assets Lacked Standing, That Would Not Mean the Superior Court Lacked Subject Matter Jurisdiction*

Even if Viracon had a viable contention regarding Pointe Assets' lack of standing, that would not require dismissal of the case for lack of jurisdiction as Viracon contends. Subject matter jurisdiction does not depend on a plaintiff's standing to bring a cause of action. (See *Harnedy v. Whitty* (2003) 110 Cal.App.4th 1333, 1338 ["the two issues (standing to sue and subject matter jurisdiction of the court) are totally unrelated in the law"].) " ' "[A] complaint by a party lacking standing fails to state a cause of action by the particular named plaintiff, inasmuch as the claim belongs to somebody else. [Citation.] A more accurately stated rationale would be that there is a defect in the parties, since the party named as plaintiff is not the real party in interest." ' " (*Cummings v. Stanley* (2009) 177 Cal.App.4th 493, 501.) " 'Defects or errors in relation to parties,' " however, " 'do not affect subject matter jurisdiction.' " (*The Rossdale Group, LLC v. Walton* (2017) 12 Cal.App.5th 936, 944; see *Jo Redland Trust, U.A.D. 4-6-05 v. CIT Bank, N.A.* (2023) 92 Cal.App.5th 142, 165 ["Under California law . . . 'lack of standing as a real party in interest is not jurisdictional; it is equivalent only to a failure to state a cause of action.' "]; accord, *County of Riverside v. Loma Linda University* (1981) 118 Cal.App.3d 300, 319.)

Accordingly, even if Viracon were correct that Pointe Assets was not the proper party to bring the claims, that would not require the superior court to dismiss the case for lack of subject

13

matter jurisdiction. Rather, "courts have permitted plaintiffs who have been determined to lack standing, or who have lost standing after the complaint was filed, to substitute as plaintiffs the true real parties in interest." (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243; accord, *Engel v. Pech* (2023) 95 Cal.App.5th 1227, 1238 fn. 3; *River's Side at Washington Square Homeowners Assn. v. Superior Court* (2023) 88 Cal.App.5th 1209, 1239.)

In sum, we find no merit to Viracon's contention that the superior court lacked subject matter jurisdiction to confirm the arbitration award. And Viracon disclaims reliance on any arguments that the arbitration award should be vacated under section 1286.2. We therefore affirm. (See *Darby v. Sisyphian, LLC* (2023) 87 Cal.App.5th 1100, 1113 ["if an award cannot be vacated or corrected, it must be confirmed"], disapproved on another ground in *Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, 952, fn. 3.)

## DISPOSITION

The judgment is affirmed. Pointe Assets is entitled to recover its costs on appeal.


STONE, J.

We concur:


SEGAL, Acting P. J.          FEUER, J.

14